MARIA JORDAN, Appellant, v. GEORGE D. WOODIN, et al.

**Will: Construction.** A will gave a minor child one-third of "the remainder of my estate." If either said child or testator's wife died before the child reached majority, then the "share of the one so dying should go to the survivor." If both died before said time, "said estate" should be inherited by those legally entitled to it by the laws of Iowa. The next clause gave the "rest of my estate" to the widow "to hold in her own right, title and sole use." *Held*, it was intended that the said share of child *and* widow should go to testator's heirs in case the child died before attaining majority.

**Same.** These bequests created an estate for life upon the happening of a contingency, and the rule that a subsequent limitation upon absolute grants is void, has no application.

**Same.** Neither do they violate Code, 1920, making void all dispositions which suspend absolute control for more than the lives of persons in being, and twenty-one years thereafter.

**Statute of Limitations.** Property is willed to a wife and child, with condition that if one dies before the child attains majority, the share of the dead goes to the survivor, and if both die before that time the estate shall go to the testator's heirs. *Held*, the said heirs' cause of action does not accrue until the property is distributed or some adverse claim to it is made.

**Same.** Both did die before said time, the child first. *Held*, the heirs lose no rights by failing to have administration continued until the death of the wife; to have a trusteeship created; to have bond given or to obtain an order retaining the property within the jurisdiction.

**Res Adjudicata.** The wife became executrix and filed final report, claiming to be the sole owner of the property. The notice served on the heirs made no claim that she was then entitled to receive any part of the estate. The report was approved. *Held*, no binding adjudication that the heirs were not entitled to the property after the death of the wife and executrix.

*Appeal from Keokuk District Court.*—HON. DAVID RYAN, Judge.

THURSDAY, JANUARY 24, 1895.

Action in equity for the interpretation of the will of Charles L. Jordan, deceased, and to recover a portion of his estate. There was a hearing on the merits, and a decree in favor of the defendants. The plaintiff appeals.—*Reversed.*

*W. W. Cory* and *Wm. McNett* for appellant.

*C. H. Mackey* and *George D. Woodin* for appellees.

Robinson, J.—Charles L. Jordan died at his place of residence, in Ottumwa, on the twentieth day of December, 1886. He left, surviving him, his wife, Eliza A. Jordan, to whom he had been married about five years, and their only child, George W. Jordan. At that time the wife was about twenty-six and the child was about three years of age. The decedent left a will, the body of which is as follows: "First, I desire that all my just debts and funeral expenses shall be paid. Second. I give and bequeath unto my beloved wife, E. A. Jordan, all my household furniture and wearing apparel for her sole use, as also my horse, phaeton, and harness. Third. I give and bequeath unto my son, George W. Jordan, the undivided one-third of all the remainder of my estate, of every kind and description whatever. The same to be put out at interest, and the interest accruing thereby, or so much thereof as may be necessary, to be applied to his education and maintenance, respectively, until he arrives at the age of majority, at which time he is to receive the principal amount, and accrued interest, if any; and, in case either my beloved wife or son shall die before the arriving at age of majority of my son, then I give and bequeath the share of the one so dying to the survivor; and if both my son and wife shall die before my son attains the age of twenty-one years, or

marriage, then said estate is to descend to and be inherited by those legally entitled to it under the laws of Iowa now in force.  Fourth.  All the rest and residue of my estate, real, personal, or mixed, of which I shall die seised, or to which I shall be entitled at the time of my decease, I give, devise, and bequeath unto my beloved wife, E. A. Jordan, to have and to hold the same and every part thereof in her own right, title, and her sole use; the same to be in lieu of her dower interest in or distributive share of my estate, and in full of any claim by her of any such interest therein.  Fifth.  I hereby constitute and appoint my beloved wife, E. A. Jordan, sole executrix of this my last will and testament.  Item.  I request that G. D. Woodin be appointed as guardian for my infant son."  The will was duly probated on the twenty-ninth day of January, 1887, and, within six months thereafter, the widow, Eliza A. Jordan, consented to the will, and accepted its provisions by a writing, which was duly entered in the proper court records.  She was appointed and qualified as executrix of the will, and entered upon the discharge of the duties of the office.  George D. Woodin, grandfather of George W. Jordan, was duly appointed his guardian.  In May, 1887, the ward died. The estate of Charles L. Jordan, at the time of his death, consisted exclusively of personal property, of the value of more than twenty-seven thousand dollars. At about the time of the probate of the will, the executrix took possession of that property, and received therefrom, as in her own right, the sum of eighteen thousand dollars, and paid to her son the sum of nine thousand dollars.  In addition, she received, on a policy of insurance on the life of her husband, payable to her as beneficiary, the sum of nine thousand dollars; and the son received, on a similar policy of which he was the beneficiary, the sum of five thousand dollars.  On the

sixth day of July, 1888, the executrix filed her report; on the ninth day of the next month, she served the plaintiff with a notice of the filing of the report; and on the twenty-eighth day of that month, the report was approved, and the executrix was discharged. After the death of Charles L. Jordan, on a date not shown, his widow married Earl D. Gray, and subsequently died, leaving no issue of the marriage. She left a will, which was duly probated, by which she bequeathed and devised one-third of her estate, her jewelry excepted, to her husband, and one-third to her father, G. D. Woodin, and one-third to her mother, Mary E. Woodin. G. D. Woodin was appointed and qualified as executor of the will. Of the relatives of Charles L. Jordan who survived him were his mother, who is the plaintiff, five brothers, and six sisters. His father had died some years before. The defendants are the executors and beneficiaries of the will of Eliza D. Gray, deceased. The plaintiff claims that she is entitled to all the estate left by Charles L. Jordan which was not required to pay debts and funeral expenses, and which was not disposed of by the second paragraph of the will. The District Court dismissed the petition of the plaintiff, and decreed that the will of Charles L. Jordan gave to his wife and son absolutely and unconditionally all of his estate not required to pay his debts and funeral expenses, and that the beneficiaries of the will of Eliza D. Gray, deceased, are the absolute owners of the property in controversy.

I. The defendants claim that this action is barred by the statute of limitations. This claim is based upon the fact that more than five years elapsed after the death of the minor, George W. Jordan, before this action was commenced. It may be conceded for the purposes of this appeal that this action would have been barred by the statute had it not been

commenced within five years from the time the cause
thereof accrued; and the question then to be deter-
mined is, when did the cause of action accrue?    It
appears that the estate of Charles L. Jordan was not
finally settled until August, 1888, and that the plaintiff
was not notified that the final report was on file until
the ninth day of that month.    The estate of George W.
Jordan was not settled until a later time.      It is not
shown that any distribution of or claim to the property
in controversy adverse to the plaintiff was made until
the settlement of the Charles L. Jordan estate.    The
earliest date on which it is shown that any claim
adverse to the plaintiff was made was that of the filing
of the final report of the executrix of that estate, which
was on the sixth day of July, 1888, or less than five
years before the defendants appeared and filed answer
in this action.    It is said, however, that the plaintiff
should have brought an action to continue the admin-
istration of the estate of her son until the death of his
widow, or to establish a trusteeship, or to compel the
giving of a bond, or to procure an order to retain the
property within the jurisdiction of the courts of this
state.    But we do not think the plaintiff was under any
obligations to guard against a violation of the provis-
ions of the will, and, if her theory in regard to it be cor-
rect, she had a right to rely upon a proper administra-
tion of the estate until something was done or some
claim was made adverse to her rights.    She asks for the
recovery of property, and, as a means to that end, asks
for an interpretation of the will by virtue of which the
property is claimed.    So far as is shown, her right to
institute an action for the purpose did not accrue until
the twenty-sixth day of July, 1888, and we are of the
opinion that the defendants have failed to show that
the action is barred..

II.   The defendants contend that the absolute and unconditional ownership of the property in controversy by Eliza A. Jordan was adjudicated when her final report as executrix was approved, and that the plaintiff is bound by that adjudication.   The report showed the death of George W. Jordan, and that the executrix claimed to be the sole owner of the estate of her late husband.   Her personal receipt for it was attached to the report.   The District Court examined the report, and "ordered that the same be, and hereby is, approved, and the executrix is fully and finally discharged from further duties and responsibilities as such executrix."   The notice of the report and application for a discharge served upon the plaintiff was as follows:   "You are hereby notified that on or before the 16th day of August, A. D. 1888, there will be on file in the office of the clerk of the District Court in and for the county of Wapello, and state of Iowa, the final report of Eliza A. Jordan, executrix of the last will and testament of Charles L. Jordan, praying that said report be approved, and her sureties discharged; and that unless you appear thereto and make defense on or before noon of the second day of the next term of said court, which term begins on the twenty-seventh day of August, A. D. 1888, the prayer of said petition will be granted, said report will be approved, said executrix will be discharged, and her sureties will be released from all liability."   It will be observed that nothing is said in the notice in regard to the interpretation of the will, nor as to the ownership of the property of the estate, nor as to the disposition to be made of it.   The seventh rule of practice adopted by the convention of district judges in January, 1887, is as follows:   "Notice of Final Report.   Unless notice be waived in writing, no administrator, executor, or guardian, or trustee, will be discharged from further duty or responsibility, nor

upon final settlement until notice of the application shall have been given to all persons interested, as required in case of an original notice for the commencement of a civil action, unless a different notice be prescribed by the court." The court had not prescribed a different notice, and the rule determined what notice should be given.    An original notice is required to state "in general terms the cause or causes of action." Code, section 2599.    The statement should be sufficiently full to inform the person to whom it is addressed of the nature and substance of the relief demanded. The notice in question informed the plaintiff of the fact that a final report would be filed, and that the executrix would ask for its approval, and for the discharge of her sureties, and, if there was no appearance that the prayer of the report would be granted, and the executrix would be discharged. The plaintiff did not claim to be entitled to the possession at that time of the estate, nor to the possession of any part of it, but conceded that her son's widow was entitled to possess it during her lifetime.    There was nothing in the notice served on the plaintiff to apprise her of the fact that the widow of her son claimed to own the estate unconditionally, nor that an interpretation of the will, which would settle the ownership, was asked.    The report did not in terms ask for an interpretation of the will.    It is true, probate courts have the right to interpret wills in order to ascertain and give effect to the intentions of testators.    *Covert v. Sebern*, 37 Iowa, 569, 35 N. W. Rep. 636.    And had the plaintiff claimed the right to receive from the executrix, before her discharge, a part or all of the estate, perhaps the notice served would have been sufficient to require the plaintiff to assert her claims, and resist the application for a discharge until her rights had been secured; but that is not this case, and we are of the opinion that

there has been no adjudication of the claim now made by the plaintiff which is binding upon her.

III. The defendants contend that the bequests made in the third and fourth paragraphs of the will are absolute, and that the provisions which in terms appear to limit the estates conferred and provide for their termination in certain contingencies are repugnant to the absolute bequests, or are precatory in character, and therefore are without effect. The plaintiff contends that it was the intention of the testator that, in case both his wife and son died before the latter married or attained his majority, the estates bequeathed to them by the third and fourth paragraphs were to go to the heirs of the testator; and as his mother was his only surviving parent, and would have been entitled to take all his estate had he survived his wife and son and died intestate, that she is entitled to take what was left by the wife at her death. In the interpretation of a will, "the intention of the testator is the first and great object of inquiry, and to this object technical rules are, to a certain extent, subservient;" and when ascertained, and not contrary to law, it is controlling. *Benkert v. Jacoby*, 36 Iowa, 274; Schouler, Wills, sections 466, 467. The intention may be gathered from the instrument itself, as well as from the relation of the testator to the parties in interest, his family arrangements, and the circumstances which surround them. *Van Rheener v. Veenstra*, 47 Iowa, 687; Schouler, Wills, section 467. The intention is to be gathered from all parts of the will taken together, and not from detached portions. *Heidlebaugh v. Wagner*, 72 Iowa, 603, 34 N. W. Rep. 439; Schouler, Wills, sections 468, 473; Redfield Wills, 431. And to ascertain the intention of the testator, it is sometimes admissible to change the language of the will, to discard words as surplusage when

they appear to be without meaning as used, to supply words, to transpose words, sentences, phrases, and even paragraphs. Schouler, Wills, section 477; Redfield Wills, 431.

The portion of the will under consideration which is the chief subject of controversy is the following: "And, in case either my beloved wife or son die before the arriving at the age of majority of my son, then I give and bequeath the share of the one so dying to the survivor; and if both my son and wife shall die before my son reaches the age of twenty-one years, or marriage, then said estate is to descend to and be inherited by those legally entitled to it under the laws of Iowa now in force." To what do the words "the share of the one so dying" and "said estate" refer? Nothing precedes the former to which they can refer, unless it be in the second paragraph of the will. But the property therein mentioned is designed for immediate use, and is of a character to be worn out and rendered of little value within a few years, and the language of the bequest as to that is complete and absolute. It is clear that the property therein described is not the wife's share of the estate, nor any part of it, within the meaning of the third paragraph of the will. The words "said estate" evidently include the share of both the wife and the son. The meaning of the testator is made plainer by transposing portions of the third and fourth paragraphs to make them read as follows: "Third. I give and bequeath unto my son, George W. Jordan, the undivided one-third of all the remainder of my estate, of every kind and description whatever. The same to be put out at interest, and the interest accruing thereby, or so much thereof as may be necessary, to be applied to his education and maintenance, respectively, until he arrives at the age of majority, at which time

he is to receive the principal amount and accruing interest, if any. Fourth. All the rest and residue of my estate, real, personal, or mixed, of which I shall die seised, or to which I shall be entitled at the time of my decease, I give, devise, and bequeath unto my beloved wife, E. A. Jordan, to have and to hold the same and every part thereof in her own right, title, and her sole use, the same to be in lieu of her dower interest in or distributive share of my estate, and in full of any claim by her of any such interest therein. Fifth. And, in case either my beloved wife or son shall die before the arriving at the age of majority of my son, then I give and bequeath the share of the one so dying to the survivor; and if both my son and wife shall die before my son shall attain the age of twenty-one years, or marriage, then said estate is to descend to and be inherited by those legally entitled to it under the laws of Iowa now in force." By this transposition it will be seen that the shares of the wife and son are treated in the same manner; that is, the language of the bequest to each is absolute, and the provisions in regard to the termination of the estate conferred apply to both. The limitation of the estate and the provisions in regard to its being inherited apply to both shares, and are good as to both, or inoperative as to each. We think it is clear that the testator intended that in case of the death of his wife and son before the latter attained the age of twenty-one, or was married, the property he bequeathed to them should go to his heirs. If this is not true, then the provision intended for that contingency is wholly without effect. But we are required to give it effect if we can do so without violating any rule of law. There is no reason for concluding that Charles L. Jordan had any desire to provide for the family and future relatives of his wife. The life insurance which he had provided for his wife and son would have furnished a reasonable

sum for that purpose, and there is no ground for believing that he desired to have his property inure to the benefit of the relatives of his wife, rather than to the advantage of his mother and numerous brothers and sisters, seven of whom were younger than himself. The disposition of his property contended for by the defendants would be unnatural, and not within the intention of the testator. The clause "then said estate is to descend to and be inherited by those legally entitled to it under the laws of Iowa now in force" is not technically accurate, but it shows with sufficient clearness that the testator desired and directed that, in the contingency specified, the property he had bequeathed to his wife and son should go to those persons who would have been his heirs had he been living.

It is insisted that the bequests to the wife and son were absolute, and that the provisions which in terms affix conditions and limitations to the bequests are repugnant to them, and therefore void. This court has frequently decided that, when a bequest or devise of property gives to the beneficiary the absolute control and right to dispose of it, a subsequent clause in terms limiting the estate conferred is void. In *Bills v. Bills*, 80 Iowa, 270, 45 N. W. Rep. 748, the rule was stated as follows: "First. When an estate or interest in lands is devised, or personalty is bequeathed, in clear and absolute language, without words of limitation, the devise or bequest cannot be defeated by a subsequent provision inferentially raising a limitation upon the prior devise or bequest. Second. When there is an absolute or unlimited devise or bequest of property, a subsequent clause expressing a wish, desire, or direction for its disposition, after the death of the devisee or legatee, will not defeat the devise or bequest, nor limit the estate or interest in the property to the right to possess and use during the life

of the devisee or legatee. The absolute devise or bequest stands, and the other clause is to be regarded as presenting precatory language." Numerous authorities were cited to sustain the rules given. See, also, *Halliday v. Stickler*, 78 Iowa, 390, 43 N. W. Rep. 228; *Killmer v. Wuchner*, 74 Iowa, 360, 37 N. W. Rep. 778; *Bulfer v. Willigrod*, 71 Iowa, 620, 33 N. W. Rep. 136. The doctrine of these cases was considered in *Stivers v. Gardner*, 88 Iowa, 307, 55 N. W. Rep. 517, and it was there said that this court has not at any time relaxed the rule that the whole instrument must be considered in arriving at the intention of the testator, and that where a devise has been held to be absolute, notwithstanding a limitation, it plainly appeared that the devise was intended to be absolute. In the case cited, a devise absolute in terms was, by reason of a subsequent limitation, held to give a life estate only. The case was followed in *Grindem v. Grindem*, 89 Iowa, 295, 56 N. W. Rep. 505. The will in this case, in describing the estate given to the wife, uses language which is somewhat more explicit than that used in connection with the bequest to the son, in that it says that the share given to the wife is to be held by her in her own right, title, and sole use. But this language adds nothing, in legal effect, to words of absolute bequest. The intent of the testator that the property which he devised in the third and fourth paragraphs of the will should, in the contingency which has happened, go to the person or persons who would have been his heirs at that time were he alive, is shown, and we do not think it should be defeated on technical grounds. The rule which permits a testator to limit the beneficiaries of his will to a life estate applies as well to personal as to real property. *Bills v. Bills, supra;* 4 Kent, Comm. 269; Schouler, Wills, section 560.

IV.   It is contended that the limitation of the estate given to the wife and son of the testator is void as against section 1920 of the Code.   That provides that "every disposition of property is void which suspends the absolute power of controlling the same for a longer period than during the lives of persons in being and for twenty-one years thereafter."   The defendants have supposed certain contingencies in which the power of controlling the estate might have been suspended or vested in the guardian of a minor for more than twenty-one years after the death of the last beneficiary of the will.   We are not disposed to imagine improbable conditions which never happened, in order to defeat the will of the testator. It is sufficient to say that the control of the estate was not suspended for the prohibited time, and that the rule against perpetuities does not apply.   We had occasion to consider that rule in the recent case of *Phillips v. Harrow*, 93 Iowa, 92, 61 N. W. Rep. 434, and our views in regard to it, so far as material in this case, are there expressed.   We conclude that the will under consideration gave to the wife and son of the testator an estate which was terminated by the death of the wife, and that the title to the property in question then passed to the plaintiff.

What we have said disposes of the important questions discussed in argument.   The decree of the District Court is reversed, and the cause is remanded for further proceedings in harmony with this opinion. —*Reversed.*