## E. J. STEWART, Administratrix, v. WILLIAM A. STEWART, *et al.*, Appellants, and RALPH R. STEWART, *et al.*

**Wills: Interpretation:** EXTRINSIC EVIDENCE. A devise of land described in the will as the south half of the *northeast* quarter will pass title to the south half of the *southeast* quarter where testator 1 owned the last named and not the first named tract and where the will shows an intention to devise the tract which testator owned. When the word north is disregarded the description covers the south half of the east quarter. There being two east quarters, a latent ambiguity becomes apparent and evidence outside of the will is admissible to explain that ambiguity.

Kinne, J., dissenting.

**Practice in Supreme Court:** REHEARING. The first opinion is suspended and ceases to have any effect when a rehearing is ordered, except as it is incorporated in or approved by the opinion filed on rehearing.

OBJECTIONS BELOW. A portion of a decree relating to advancements, 8 rendered in a proceeding for the interpretation of a will, will not be considered on appeal, where it affects the appellants only, and no objection was made or exception taken in the trial court.

*Appeal from Washington District Court.*—HON. A. R. DEWEY, Judge.

THURSDAY, JANUARY 23, 1896.

This is a proceeding in equity for the interpretation of the will of John Stewart, deceased. From the decree rendered, a part of the defendants appeal.— *Affirmed.*

*C. J. Wilson, Woodin & Son,.* and *E. M. Shelton* for appellants.

*H. & W. Scofield* and *Roberts & Brookhart* for appellee.

Robinson, J.—The questions in controversy are presented by the pleadings and agreed statement of facts. From these it appears that John Stewart, a resident of this state, died in November, 1893, and his will was duly probated at the next January term of court. This action is brought by the administratrix of his estate for the interpretation of the will. The defendants are seven children by his first wife, and the child of another child by that wife, and seven children by his second wife. At the time of his death the testator was the owner of the south half of the southeast quarter of section No. thirty, the north half of the northeast quarter of section No. thirty-one, the west half of the southeast quarter of section No. thirty-two, —all in township No. seventy-six north, of range No. seven west,—and two timber lots of small value. All of the tracts were worth, together, about fourteen thousand dollars, those in sections thirty and thirty-two being of the value of about four thousand dollars each. The decedent also left property, consisting of money deposited in the bank, stock, grain, hay, and other personal property on his farm, of the aggregate value of four thousand five hundred dollars. He was not owing anything, and the debts against his estate are for the expense of his last sickness and funeral, and are small in amount. The will gave to his widow the tract of land in section thirty-one, which was the home farm, one of the timber lots, one horse, two cows, and household and kitchen furniture, in lieu of dower, and to two sons by his first wife, and two sons by the second one, the other timber lot. These provisions of the will are not in dispute. Those portions which are to be considered in the determination of the questions presented are as follows: "Item 2. It is my will, and I do hereby give, devise, and bequeath to my son Ralph R. Stewart the west half of the southeast quarter of

section No. thirty-two (32) in township No. seventy-six (76) north, of range seven (7) west, * * * charged, however, with the payment of the sum of four thousand dollars; one thousand dollars to be paid two years after my decease, the residue to be paid one thousand dollars each year from that time until the whole sum shall have been paid. Item 3. It is my will, and I do hereby give, devise, and bequeath to my son Fred D. Stewart the south half of the northeast quarter of section No. thirty (30) in township No. seventy-six (76) north, of range seven (7) west, * * * subject, however, to the payment of the sum of three thousand four hundred twenty-eight dollars and seventy-five cents, in manner following, to-wit: Eight hundred and fifty-seven and eighteen one-hundredths dollars ($857.18) in two years from date of my death, and a like sum annually from the time of each payment until the whole sum shall have been paid." "Item 6. It was and is my will and intention that the land devised and bequeathed by item second thereof should—the proceeds thereof—go in equal shares to the children and heirs at law of my first wife, long since deceased; and I do hereby direct the executor of this my last will and testament to pay the money collected from the devisee Ralph R., in equal parts, to my granddaughter, Clara Hamil, Mary A. Palmer, my daughter Francis A. E. Tripp, my son William A., my daughter Sarah, my daughter Flora J., my sons John F. and George Stewart, or, in the event of either of them dying, then to heir or heirs of such one equal share of such sum. Prior to the making of this will I have given, by way of advancement, to William A. and Samuel E., two hundred and fifty dollars. My son William's and my granddaughter Clara Hamil's shares are to be diminished by that amount. Item 7. It is my will and intention that the children of my present wife shall equally share in the proceeds of the land bequeathed

to my son Fred D., valued at four thousand dollars. F. D. having received his share in land, the remainder of the value of said land—the same by this will directed to be paid by him—is to be equally divided among the remainder of said children, to-wit, my son Ralph R., my daughter Alice Caldwell, Maud M., Cordelia B., Myrtle O., and Jessie B.; in the event of the death of either of them before the taking effect of this will, the share of such decedent to be paid to its heirs. Item 8. The residue of my estate I direct to be divided equally, share and share alike, between all my heirs." The south half of the northeast quarter of section thirty in township seventy-six north, of range seven west, did not belong to the testator when his will was made, but was then, and had been for years, owned and occupied by one Charles Crumpacker. The south half of the southeast quarter of that section, which was owned by the testator, is not described in the will. The petition alleges that doubts have arisen whether item three of the will devises to Fred D. Stewart any land to which he can claim title, and, if it is held that it does not, whether he and Ralph R., Maud M., Cordelia B., Myrtle O., and Jessie B. Stewart, and Alice Caldwell take anything under item seven, and whether the advancement mentioned in item six means that two hundred and fifty dollars was advanced to William A. Stewart, and the same amount to Samuel E. Stewart, or whether the advancement was the aggregate sum of two hundred and fifty dollars to both. The plaintiff asks that the will be construed with respect to the matters in doubt. The district court found that the testator intended to and did devise the south half of the southeast quarter of section thirty to Fred D. Stewart, subject to the amounts as provided in the will, and that the advancement to be deducted from each of the bequests to William A. Stewart and Clara Hamil should be computed as two hundred and fifty dollars.

The children by the first wife, and the grandchild Clara Hamil, appeal.

I. It is claimed that the district court corrected the will, and that in so doing it violated well-established rules applicable to the construction of wills. It is hardly accurate to say that the will was corrected by the court. Its reformation was not asked nor attempted, but the court interpreted it to intend that for which the decree provides. The stipulation as to the facts shows that the testator intended to devise the land he owned in section thirty to his son Fred, but that the error in the description was due to a mistake by the scrivener. A clause in the stipulation provides that in determining the case the court may exclude such of the facts shown in the stipulation as are immaterial, irrelevant, or incompetent, and the appellants insist that the stipulation is not competent to show that a mistake was made in the description of the land in question. Whether the stipulation can be considered, with other evidence, to show the mistake, must depend upon all relevant parts of the will. It is true that a will cannot be reformed by a court of equity to express the intent of the testator as gathered from evidence not contained in the will, but, when different parts of it are inconsistent with each other, resort may sometimes be had to evidence outside the will to ascertain the testator's intent; for that is the matter of first importance, and when known, and not in violation of the law, is controlling. Technical rules which tend to defeat that intent are, to some extent, disregarded. "The intention may be gathered from the instrument itself, as well as from the relation of the testator to the parties in interest, his family arrangements, and the circumstances which surround them. * * * And, to ascertain the intention of the testator, it is sometimes admissible to change the language of the will;

to discard words, as surplusage, when they appear to
be without meaning as' used; to supply words; to trans-
pose words, sentences, phrases, and even para-
graphs. *Jordan v. Woodin,* 93 Iowa, 453 (61 N. W.
Rep. 950). 'It is also well settled that extrinsic
evidence may be resorted to, in many cases of
latent ambiguity, to ascertain the intent of the
testator. Thus, in *Patch v. White,* 117 U. S. 210 (6
Sup. Ct. Rep. 617, 710), it is said that: "It is settled
doctrine that, as a latent ambiguity is only disclosed
by extrinsic evidence, it may be removed by 'extrinsic
evidence. Such an ambiguity may arise upon a will,
either when it names' a person as the object of a gift,
or a thing as the subject of it, and there are two persons
or things that answer such 'name or description; or,
secondly, it may arise when the will contains a mis-
description of the object or subject, 'as where there is
no such person or thing in existence, or, if in existence,
the person is not 'the one intended, or the thing does
not belong to the testator.    *    *    *    When it con-
sists of a misdescription,    *    *    *    if the misdescrip-
tion can be struck out, and enough remains in the will
to identify the person or thing, the court will deal
with it in that way, or, if it is an obvious mistake, will
read it as if corrected.    The ambiguity in the latter
case consists. in the repugnancy between the manifest
intent of the will and the misdescription of the donee
or the subject of the gift.    In such a case evidence is
always admissible to show the condition of the testa-
tor's family and estate, and the circumstances by
which he was surrounded at the time of making his
will."    This rule, as applied to the misdescription of
the thing intended to be devised, was approved by this
court in the case of *Eckford v. Eckford,* 91 Iowa, 54 (58
N. W. Rep. 1093.)    It is fair to presume that the testa-
tor intended to devise what he owned, and not prop-
erty owned by another.    *Patch v. White, supra.*    Such

VOL. 96 Ia—40

a presumption alone might not be sufficient to over-
come the effects of the language actually used in the
will, but in this case it is supplemented by different
portions of the will and by the circumstances under
which the will was drawn. The fact that the land
given by item three was made subject to the payment
of six-sevenths of its full value by the devisee is
entitled to great weight, as showing the intent of the
testator to pass a perfect title by the devise. The
tract of land devised to Ralph by item two of the will
is of the value of four thousand dollars only, and the
devise required Ralph to pay that amount to the heirs
of the first wife. Ralph was a child of the second wife,
and received no benefit from the devise, unless, possi-
bly, in the use of the land, or its value, without cost,
until the payments with which it was charged should
be made. The devise was for the benefit of eight per-
sons, but each of two of them was chargeable with an
advance, which, it is agreed, was two hundred and
fifty dollars. The amount which the testator intended
to allow the beneficiaries of item two, as modified by
item six, was four thousand dollars in the value of the
land, and five hundred dollars in advancements, or a
total of four thousand five hundred dollars or five hun-
dred and sixty-two dollars and fifty cents each. Item
three was intended to give to the seven children by the
second wife property of the value of four thousand dol-
lars, or five hundred and seventy-one dollars and forty-
three cents to each. The residuary clause was for the
benefit of all the heirs of the testator, in equal shares.
Not counting the timber lot devised to his sons,—
which, as we have seen, was of small value, and was
given to two sons by the first and two by the second
marriage,—the difference between the shares of the
children by the two marriages was less than ten dol-
lars to each child. It thus appears that the testator
intended to treat the surviving children and the child

of the one deceased substantially alike. But if the interpretation contended for by the appellants is to prevail, each of them will receive as much as will each of the children by the second marriage, some of whom are minors, and five hundred and sixty-two dollars and fifty cents in addition. The will shows that this was not the intent of the testator, and the stipulated facts fully confirm it. Must the intent thus made manifest be defeated? We think not. The evidence shows that the description of the land in question is in part wrong. After rejecting the erroneous portion, the remainder describes "the south half of the east quarter of section No. thirty (30)," etc. The section contains two tracts which may be properly spoken of as "the east quarters," and, under the rules of interpretation cited, we are of the opinion that extrinsic evidence may be received to show what quarter was intended by the testator. This conclusion finds support in *Eckford v. Eckford*, 91 Iowa, 54 (58 N. W. Rep. 1093), and cases therein cited; *Chambers v. Watson*, 60 Iowa, 339 (14 N. W. Rep. 336); *Severson v. Severson*, 68 Iowa, 656 (27 N. E. Rep. 811). See, also, *Whitcomb v. Rodman* (Ill. Sup.), 40 N. E. Rep. 553; *Webb v. Carney* (N. J. Ch.) 32 Atl. Rep. 705. The opinion in the *Eckford Case*, to which we have referred, is the one filed after rehearing was granted. The appellants rely to some extent upon portions of the opinion first filed, on the theory that all parts of it not modified by the second opinion remain in force. That is not the case. When a rehearing is ordered, the first opinion is suspended, and ceases to have any affect, excepting as incorporated in or approved by the opinion which is filed on rehearing. *Pitkin v. Peet*, 98 Iowa,—(64 N. W. Rep. 795).

II.    It is contended that the district court erred in fixing the amount of the advancements at the aggregate sum of five hundred dollars, instead of two hundred and fifty dollars.   The will shows that the advancements were to be considered in distributing the money which was to be paid by Ralph R. Stewart, and the appellees have no interest in it, and are not affected by that part of the decree which fixed the advancements.   It concerns the appellants alone. Moreover, they failed to except or in any manner to object to it in the district court.   It was according to the admitted facts, and it may have been, as claimed by the appellees, dictated by the appellants.   Under these circumstances, we must decline to consider that part of the decree on its merits.   We find no cause for disturbing the decree, and it is *affirmed*.

Kinne, J. (dissenting).—As I view this case, there is nothing in this will which justifies the construction placed upon it in the majority opinion.   In the *Eckford Case* the testator, in the will, stated that he owned the land which he undertook to devise.   There is no such statement in this will.   By virtue of an agreement of the parties to the suit, it is sought to overcome a plain, unambiguous description in the will, and to substitute in lieu thereof a different description.   In my judgment, when the facts are considered, the majority opinion in the case is an extension of the doctrine laid down in *Eckford's Case*.   By it almost every safeguard surrounding the execution of wills is swept away.   My views touching the question involved in this case are fully set forth in the dissenting opinion in the case of *Eckford v. Eckford*, 91 Iowa, 54 (58 N. W. Rep. 1093).