WILLARD LAYTON et al., Appellants, v. LEE W. TUCKER, Appellant; BURR SHIPLEY et al., Appellees.

No. 46847.

JUNE 18, 1946.

624

W. H. Scott, of Nashua, Arthur W. Hyke and Pike, Sias & Butler, all of Waterloo, for appellants.

Larson & Carr and R. W. Zastrow, all of Charles City, for appellees.

OLIVER, J.—This appeal involves one hundred fifteen acres of farm land which plaintiffs and defendant Lee W. Tucker, appellants herein, claim under the residuary clause of the will of Eva M. Cagley, deceased. Defendant-appellees Burr Shipley, Doris Fallgatter, Robert Cagley, and Gladys Lord claim said land under another clause of the same .will. Other appellees are merely nominal parties to this appeal and for convenience the four persons last-above named will be referred to herein as though they were the only appellees.

Testatrix Eva M. Cagley was the widow of John Cagley. Clare Cagley was their only surviving child or issue. John Cagley died in 1920. His estate consisted of the one-hundred-fifteen-acre "old home farm" here involved and about $13,000 in personalty. Under his will the daughter Clare took $5,000 and testatrix received a life estate in the farm and the entire remainder of John Cagley's estate. Clare died intestate and without issue in 1924 and her entire estate, amounting to about $5,000 passed to her husband, appellant Lee W. Tucker. Testatrix Eva M. Cagley died in 1943. Her estate consisted of the one-hundred-fifteen-acre tract in question, appraised with an adjoining forty-acre tract at $11,000, and other real estate and personal property appraised at about $47,000. Her will, executed in 1939, provides in part as follows:

Paragraph I directs payment of debts. .Paragraph II:

"It is my belief that 120 acres of land described as the SE¼ of the NE¼ and the W½ of the NE¼ (less 5 acres) in Section 28, Twp. 94, Range 14, owned by my deceased husband John Cagley, which he gave in his last will to our daughter, Clare Cagley, subject to a life estate willed to me, be distributed to his four nieces and nephews, named as follows, Burr Shipley, Doris Fallgatter, Robert Cagley, and Gladys Lord, said Clare Cagley now being also deceased."

Paragraph III leaves thirty cash legacies totaling $7,200 to certain relatives, public institutions, two tenants on the farm, and two persons who were born there. None of the appellees is mentioned in this paragraph but the wife of one is bequeathed $100. Paragraph IV:

"All of the rest and residue of my estate of every name and nature and wherever found, I give, devise and bequeath in equal amounts, to be divided between the following four persons, share and share alike, Lee W. Tucker, former husband of my daughter, Clare Cagley, P. A. Layton, a brother, Willard Layton, a brother, and Minnie Layton, a sister * * *."

That testatrix had a sentimental regard for the farm is indicated by her bequests to former and present tenants and to two children "born on my old home farm." Under the residuary clause of the will appellants, who are her brothers, sister, and son-in-law, receive the bulk of her estate. Appellees, who were on friendly terms with testatrix, are the only surviving blood relatives of her deceased husband. Under the circumstances, the return to them of her husband's farm would seem to be a natural act. If Paragraph II does not give them the farm it would pass to appellants under the residuary clause and appellees would take nothing under the will.

The will was not drawn by a lawyer. The president of the bank with which testatrix dealt testified he drew the will or assisted testatrix in making it; that she handed him a paper upon which she had written the disposition made of the farm and this was copied by him as Paragraph II of the will; that she gave him a list of the names of the legatees and the amount of each legacy and he placed those in Paragraph III; and that she also told him the names of the persons to whom she wanted the remainder to go, from which he prepared Paragraph IV. Hence Paragraph II (only) is in the language of testatrix herself, placed in the will without legal assistance or correction. Its language and phraseology are inept and its meaning is technically subject to question.

The cardinal purpose of the construction of a will is to ascertain the intent of the testator. In re Estate of Austin, 236 Iowa 945, 20 N. W. 2d 445; In re Estate of Pottorff, 216

Iowa 1370, 250 N. W. 463. Where such intent is not clearly expressed the court will, as far as possible, place itself in the position of the testator and consider the surrounding circumstances as an aid in determining the meaning in which the language was used. In re Estate of Dodge, 207 Iowa 374, 380, 223 N. W. 106.

Technical rules which tend to defeat that intent are to some extent disregarded. The intent may be gathered from the instrument itself, as well as from the surrounding circumstances. To ascertain the intent of testator it is sometimes permissible to change the language of the will, to discard words, as surplusage, when they appear to be without meaning as used, to supply words, to transpose words, sentences, phrases, and even paragraphs. Stewart v. Stewart, 96 Iowa 620, 624, 65 N. W. 976; Ellsworth College v. Carleton, 178 Iowa 845, 850, 160 N. W. 222; Jordan v. Woodin, 93 Iowa 453, 460, 61 N. W. 948.

If a testamentary provision is reasonably susceptible to two constructions, one of which would make it void or inoperative and another which would render it valid, the latter must be taken and the former rejected. Jensen v. Nelson, 236 Iowa 569, 571, 19 N. W. 2d 596, 598; In re Estate of Austin, 236 Iowa 945, 948, 20 N. W. 2d 445, 447; 69 C. J. 88, section 1146.

Paragraph II of the will states: "It is my belief that" the described land, "owned by my deceased husband John Cagley, which he gave in his last will to our daughter, Clare Cagley, subject to a life estate willed to me, be distributed to his four nieces and nephews named as follows," naming appellees, "said Clare Cagley now being also deceased."

It is apparent that said sentence refers not only to the disposition of the land but also the devolution of testatrix' title thereto and her consequent right to dispose of it by will. Correct sentence structure would require that the phrase "it is my belief" have reference to the dispositive part of the sentence. However, we are not here considering a perfect sentence. From the context and the circumstances surrounding the making of the will we conclude testatrix intended to use the phrase "it is my belief" to express her conviction that she owned the land.

Such parts of the sentence may fairly be interpreted as a declaration of the belief of testatrix that under the will of John Cagley she took only a life estate in the farm, and that the fee passed to her upon the death of their daughter Clare. In this she was mistaken. Such mistaken belief was apparently due to the fact that the clause of John Cagley's will which specifically described the farm gave her a life estate only. However, John's will did not give the daughter Clare any interest in the land. Testatrix received the fee under the residuary clause of John's will and continued to own the same until her death. There is no reasonable basis for an assumption that she thought appellees, who were not mentioned in her husband's will, received anything thereunder or from Clare's estate. Her mistake was not in her belief that she owned the land but as to how she secured the fee title. It is sufficient that she did own the land and believed she owned it.

The declaratory part of Paragraph II does not tend to negative the dispositive part, which provides the land "be distributed to" appellees. The phrase "be distributed to" definitely directs the disposition of the property to appellees. When the dispositive language is separated from the declaratory part the meaning of Paragraph II becomes clear. Such construction makes Paragraph II operative and we conclude it removes any doubt as to the expressed intent of testatrix. Hence we hold, as did the distinguished trial court, that Paragraph II of the will is a devise of the real estate therein described to the four devisees therein named.—Affirmed.

BLISS, C. J., and HALE, GARFIELD, MANTZ, MULRONEY, WENNERSTRUM, and MILLER, JJ., concur.