In re ESTATE OF JOE DITZ, deceased.

WILLIAM BUSCH et al., appellants, v. ROSE BAUTE et al., appellees; EVAN HULTMAN, Attorney General of Iowa, intervenor.

No. 50728.

(Reported in 117 N.W.2d 825)

NOVEMBER 13, 1962.

William B. Norton, of Lowden, Rees, Remley & Heiserman, of Anamosa, and VanMatre & VanMatre, of Mexico, Missouri, for appellants.

Otto L. Schluter and Lynch, Dallas, Smith & Harman, all of Cedar Rapids, James T. Remley, of Anamosa, and James F. Casterline, of Tipton, for appellees.

Evan Hultman, Attorney General, and Bruce M. Snell, Jr., Assistant Attorney General, for intervenor.

THOMPSON, J.—Joe Ditz, a resident of Cedar County, died testate on May 29, 1961. His last will and testament, with one codicil, was admitted to probate on June 15, 1961. Mr. Ditz had apparently been a thrifty citizen. The inventory in his estate shows that he left real estate valued at $365,400 and personalty in the amount of $441,280.53. He left no spouse surviving him and no immediate relatives; his closest next of kin apparently being nieces and nephews and grandnieces and grandnephews.. Several specific bequests were set up in his last will and the codicil thereto; and there were certain trusts provided.

The only part of the will under attack here is Paragraph Thirteenth. This is in the nature of a residuary clause, and attempts to set up a charitable trust. It is lengthy, but a consideration of it is essential to a discussion of the legal questions raised, and we set it out in full:

"THIRTEENTH: All the rest, residue and remainder of the property, real or personal, of which I shall die seized or possessed, or to which I may be entitled at the time of my death, I give, devise and bequeath unto Otto L. Schluter, Fred Feddersen and Lloyd Hasselbusch, in trust, for the following uses, objects and purposes:

"I direct that my said Trustees distribute and contribute my said property to such organizations and institutions organized and operated exclusively for religious, charitable and educational purposes.

"I hereby grant unto my said Trustees, full and complete power and authority to perform all acts and duties necessary or required to carry out and put into effect the expressed purposes

of this trust; that I empower and authorize my said Trustees to take possession and control of all my said property, collect the income, rents and profits therefrom, invest and reinvest trust assets, the investments not being limited to those authorized by law for trust investment; to sell all real estate not hereinbefore specifically devised, at a price which in their judgment represents its fair market value, and personal property, all without order or approval of court; to do any and all things to the same extent and with the same effect which I could do, if living; that I grant unto my said Trustees, unrestrained and unlimited authority to select the aforesaid organizations and institutions and to direct the amount of trust funds to be devoted and contributed to any or each of such organizations or institutions; I further direct that upon death of any one or two of my said Trustees, the survivors or survivor shall continue with full power to act, and that a majority of their number shall govern the determination of trust affairs, including the selection of the organizations and institutions and the amount to be contributed to them.

"That upon payment of expenses and that upon full distribution of the contributions herein authorized, this trust shall terminate and be at an end, and the Trustees shall be discharged upon final approval of their accounting by the court."

This paragraph is said by the plaintiffs to be void because the purposes and beneficiaries are impossible of ascertainment by the court; there is no ascertainable class; it is too indefinite and uncertain as to any class which is to partake of the trust; the intention of the testator is not expressed and it is impossible for the trustees to carry out the terms; the trust does not specify how much of the income or principal is to be devoted to religious, educational or charitable purposes; no one can say what the testator meant by "religious", "charitable" or "educational" purposes; discretionary trusts without purpose, objective, direction or intent shown are contrary to public policy; there is no provision for appointment of a successor trustee or trustees in case of death or incapacity of those appointed; and the absolute and uncontrolled discretion lodged in the trustees is illegal and repugnant to the laws of the State of Iowa.

The petition was attacked by the defendants by motion to

448

dismiss and to strike. The attorney general of Iowa filed a petition of intervention alleging his duty to uphold charitable trusts, and answered, in effect making common cause with the defendants. Paragraph (1) of the defendants' motion to dismiss alleged in effect that the allegations of plaintiffs' petition summarized above consist of erroneous legal conclusions and do not set forth any tenable basis for declaring the Trust invalid. The trial court granted the motion to dismiss on this ground, the plaintiffs declined to plead over and elected to stand on the ruling, and we have this appeal from the following judgment of dismissal.

The plaintiffs' case depends on two major contentions: first, the language of the second complete paragraph of that part of the will labeled "THIRTEENTH" does not makes a complete sentence, there is clearly something lacking and the intention of the testator cannot be known from what is said and so there is a fatal defect in the express purposes of the trust; and second, there is a fatal indefiniteness in designation of the beneficiaries. These are the questions argued and so to which we give attention.

I. It will be observed by the second paragraph of Thirteenth set out above that the Trustees are directed to distribute and contribute the property to "such organizations and institutions organized and operated exclusively for religious, charitable and educational purposes." It is the plaintiffs' thought that there is clearly something lacking. In effect they say "Such as what? Such as those located in Cedar County, or some other place? or such as those devoted to a certain kind of charity, or religion, or educational purpose?" At the very least, they contend, there should be evidence taken as to what was meant by this language; although they do not admit the defect could be cured by evidence.

We are not impressed by these contentions. It requires a strained interpretation of the language and the whole language of the will to arrive at any other conclusion than that the testator meant to designate such organizations and institutions as are operated solely for religious, charitable and educational purposes, and might be selected by his trustees as the beneficiaries of the trust. It is only necessary to take the meaning of Thirteenth from its four corners to arrive at this construction. We have said that to ascertain the meaning of the testator it is

sometimes proper to discard or transpose words in a will, or, more in point here, to supply them. Layton v. Tucker, 237 Iowa 623, 626, 23 N.W.2d 297, 298, and citations. So, if a testamentary provision is susceptible of two constructions, one of which would make it void and the other would render it valid, the court must choose the latter. Layton v. Tucker, supra, loc. cit. 237 Iowa 626, 23 N.W.2d 298. Whether it is necessary to resort to these last cited authorities to make the testator's meaning clear in the case before us may well be doubted; but they furnish a proper method of interpretation if one is needed. We find no merit in plaintiffs' contention at this point.

II. Nor do we think the designation of the trust beneficiaries is so vague and indefinite that the trust must fail. Perhaps the exact point at issue here has not been decided in Iowa; but it has been closely approached in several cases. The question may be stated thus: Is a general bequest to charity, that is to say, for charitable purposes, with the power lodged in named trustees to select the beneficiaries, so indefinite and uncertain that it must be held to be void? The plaintiffs urge strongly that we have never gone so far as to approve such a trust.

Here the shadow of our many previous pronouncements hangs darkly over the plaintiffs. If we have never said that such a trust is valid as applied to the facts of the several cases which have come before us, there are certainly many near misses. Iowa is among those jurisdictions which go to considerable lengths in upholding charitable trusts. As recently as in Eckles v. Lounsberry, 253 Iowa 172, 177, 111 N.W.2d 638, 641, we said:

"Charitable gifts are strongly favored by the courts and will be upheld wherever possible. [Citing authorities]

"In considering a charitable bequest we have approved this statement of Lord Hardwicke, 'There is no authority to construe it to be void, if by law it can possibly be made good' [citations]."

So in In re Estate of Small, 244 Iowa 1209, 1225, 58 N.W.2d 477, 485, we used this language: "It is a well-recognized rule, uniformly [universally] followed by all courts, that gifts to charitable uses and purposes are highly favored in law, and will be most liberally construed to make effectual the intended pur-

pose of the donor. This court has always been zealous in protecting the rights of beneficiaries of charitable trusts."

More specifically, we have many times used language which fits the identical situation here. In Gray v. Watters, 243 Iowa 430, 437, 51 N.W.2d 885, 889, we quoted with approval from Quinn v. Shields, 62 Iowa 129, 141, 17 N.W. 437, 442, 49 Am. Rep. 141: "The will does not specifically name the persons or institutions that are to receive the charity. It leaves the beneficiaries to be chosen and named by the person appointed to distribute the charity. It is competent for a testator to bestow a charity upon a person or institution to be chosen or named by a trustee or executor. In that case, there is no uncertainty of the beneficiary." To the same effect are several other cases, including Beidler v. Dehner, 178 Iowa 1338, 1342, 161 N.W. 32, 34, and Wilson v. First National Bank, 164 Iowa 402, 409, 145 N.W 948, 951, Ann Cas. 1916D 481. Indeed, the general language of these and other cases is not disputed by the plaintiffs; but they say the facts were different, in that in each case there was a more specific designation of the class of beneficiaries, so that their selection was to some extent limited and indicated by the will. Thus they point out that in Quinn v. Shields, supra, the bequest was to be exercised in favor of educational and religious institutions of the Roman Catholic faith. In Grant v. Saunders, 121 Iowa 80, 95 N.W. 411, 100 Am. St. Rep. 310, the trust was for the benefit of the poor. The exact language was " 'I will and bequeath to Barbary R. Fouche, in trust, the remainder of my estate whatever it may be, for the benefit of the poor, and to be given by her to such objects, as in her judgment is worthy of assistance, from time to time, and at such times and persons as she thinks best to help.' " A demurrer to the petition which asked a construction of the will in favor of the heirs of the testator was sustained by the trial court and the ruling affirmed by us. In Beidler v. Dehner, supra (at page 1340 of 178 Iowa), the residuary bequest was " 'for distribution among the poor of the county of Luxemburg, confiding this to be the wise disposal of the cantonal curate of Mersch, Grand Duchy of Luxemburg, Europe.' "

It is difficult to follow the distinction which the plaintiffs attempt to make. It is true the trustee in Quinn v. Shields,

supra, was limited to application of the charitable funds to educational and religious institutions of the Roman Catholic faith; but here the power was nevertheless very broad. There are almost innumerable such institutions in the United States, and, for that matter, the trustee was not confined to this country. A bequest for the benefit of "the poor", as in Grant v. Saunders, supra, gave the trustee a still wider range. The poor, as we understand it, are found all over the world; and who is "poor" and who is not leaves the widest room for exercise of judgment in bestowing the benefices permitted by the bequest. The purpose stated in Beidler v. Dehner, supra, is somewhat more specific; but it still left the trustee a considerable discretion in selecting the beneficiaries.

At least two other jurisdictions have considered the question directly involved here, and have upheld charitable bequests identical in substance with that set up in the will now before us. In re Estate of Planck, 150 Wash. 301, 302, 307, 272 P. 972, 974, dealt with this provision: " 'NINETEENTH: All the rest and residue of my estate after paying the foregoing bequests and gifts, I devise to charity and to charitable purposes, and I hereby authorize my said executrix to convert all the rest and residue of my said estate into cash, and further authorize her to give and dispose of the same to worthy charities and to such charitable purposes as she may believe to be fit and proper recipients thereof . . .' ." The Washington Supreme Court upheld the charitable trust so created, quoting: " 'Though the charity does not fix itself upon any particular object, but is general and indefinite, if certain or ascertainable trustees are appointed with full powers to select the beneficiaries, and devise a scheme or plan, the courts will, through such trustees, execute the charity. It certainly is competent for a testator to bestow a charity on a person or institution to be chosen by a trustee or executor.' " The quotation is from Zollmann, American Law of Charities, section 433, and was approved and followed by the Washington Supreme Court.

The Texas Supreme Court had the identical question before it in Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497. In a thorough and well reasoned opinion it held that a general bequest to charitable purposes, the beneficiaries to be selected by

452

named trustees, is valid and enforceable. It cited with approval this language from Restatement, Trusts, section 396, page 1189: "A charitable trust is valid, although by the terms of the trust the trustee is authorized to apply the trust property to any charitable purpose which he may select, if the trustee is able and willing to make the selection." Loc. cit. 145 Tex. 211, 196 S.W.2d 500.

To the same effect are Scott, Trusts, Volume 3, section 396; 10 Am. Jur., Charities, section 83, page 644; and 14 C. J. S., Charities, section 17, page 449. The plaintiffs cite to the contrary Hoenig v. Newmark, Ky., 306 S.W.2d 838, and Hedin v. Westdala Lutheran Church, 59 Idaho 241, 81 P.2d 741. We shall not attempt to analyze these cases to determine whether either or both may be distinguished because of the application of special statutes or for other reasons. It is evident they are opposed to the general current of authority, and that the trend and disposition in Iowa have been to exercise the utmost possible liberality in upholding charitable bequests. We think our decision in the instant case is clearly indicated by the many cases, such as Gray v. Watters, Beidler v. Dehner, and Quinn v. Shields, all supra, and several others which have in language and practical effect adhered to the rule stated in the authorities first cited in this division.

▮ The bequest here is to "organizations and institutions organized and operated exclusively for religious, charitable and educational purposes." By this language, the testator devoted the residue of his estate to the broad field of charitable institutions. Is it possible that we should say that because he did not select certain specific charities, but embraced all charities, he was not sufficiently definite? The words used are exact in meaning, in that they cover all institutions organized for charitable purposes. They establish a charity universal rather than limited and parochial. The whole embraces all of its component parts. The testator was evidently unwilling to limit his charities to any particular organization or institution; and he appointed trustees in whose good judgment and discretion he reposed confidence that they would administer the trust property wisely. If he chose to embrace all mankind in his charitable purposes rather than a

selected and limited few, it is not for us to strike down the trust as uncertain. We have often expressed the rule that we will not declare a charitable trust bequest void if there is any reasonable means of upholding it. Both reason and the weight of authority support the testator's action here.

III. By way of illustration of the supposed evils which might flow from the unlimited power to devote the trust property to such charitable institutions as their judgment might dictate, the plaintiffs say the trustees might decide to support some institution in Algiers, where the funds would be entirely out of the control of the Iowa courts and might be sequestered or confiscated —expropriated seems now the popular word for this form of governmental larceny—by the authorities there. We do not share the apprehension felt by the plaintiffs at this point. In these days of Marshall Plans, Peace Corps, vast governmental appropriations for foreign aid, shrinking of distances between the various parts of the world, and a vast gaggle of new nations springing up in Africa and elsewhere, an application of a fund to a foreign charity is not unthinkable. We found no such danger in Beidler v. Dehner, supra, where the trust was expressly for the benefit of the poor of Luxemburg, the specific beneficiaries to be determined by a curate of that country.

The real answer is, of course, that the testator relied upon his appointed trustees and their good judgment to use the property wisely and to the best advantage. We may think it unlikely that Mr. Otto L. Schluter and his fellow trustees will be found appropriating the trust property to the beneficial interests of the Arabs of Algiers; but this is a matter for their decision under the supervision of the court.

IV. It is well settled that the courts have jurisdiction to supervise the uses of the funds in charitable trusts. Section 604.4, Code of 1962. For a discussion of the power of courts of equity to supervise charitable trusts, even when there is no governing statute, see Boyd v. Frost National Bank, supra, loc. cit. 145 Tex. 211, 196 S.W.2d 500. It should also be noted that the provision of "THIRTEENTH" is that the trustees must make a final accounting to the court and procure its approval. Also it is the duty of the attorney general to protect the public interest in

454

charitable trusts, and we must assume this official will do his duty. He has already intervened in the case at bar for the purpose of upholding the trust.

We find no error, and conclude that the decree and judgment of the trial court were right.—Affirmed.

All JUSTICES concur except SNELL and STUART, JJ., who take no part.