Shaw, C. J.
These are actions for money had and received, and the grounds taken by the plaintiffs are correct to this extent, that no other privity is necessary to enable one to maintain an action for money had and received against another, than an equitable duty,to pay it over, according to the trust on which he has received it. So, when one has deposited money with another, with authority to apply it to a special use, for objects on account of which the depositor owes no debt or duty, if the authority is revoked before the accomplishment of the purpose, and before the depositary has disposed of the money pursuant to the trust, the depositor may demand it back, and from that time it will be deemed to be money held to the use of the depositor, which he may recover in this action.
Nor does it appear to be material to this position, whether the object to be accomplished be legal or illegal. If it be legal, but the purpose fails, the consideration on which it was deposited fails, and then the defendant can no longer conscientiously retain it; he is bound to pay it back, and this raises an implied promise to do so. If the purpose be illegal, if the depositary has paid the money for the accomplishment of such purpose, the depositor is in pari delicto, and cannot invoke the aid of the law to recover it. Howson v. Hancock, 8 T. R. 575. But if not paid over, he may revoke the authority of the depositary, and thus prohibit him from promoting the illegal object, and recover back his money. Bell v. Gilbert, 12 Met. 397.
But these rules have very little application to the present case; the facts disclosed do not bring the case within them.
In the first place, the money can hardly be said, in any proper sense, to be paid by the plaintiffs to the defendant. It was money in fact paid in, or promised to be paid in, at a *165 public meeting of the friends of Ireland, organized as mere voluntary unincorporated associations are usually organized, for raising money to assist the people of Ireland in their struggle for independence with the British government. At this meeting, the chairman or presiding officer called upon the persons present to contribute money for the object contemplated, and, towards the close of the meeting, many per sons did contribute. Murray, the plaintiff, handed $100 tc the chairman, and requested him to announce it as the contribution of himself and ~W. Murray. And this was done by many others. The money was handed to the chairman, in the first instance, and by him to the defendant. It appears that, prior to the meeting and immediately preceding it, two different associations of the friends of Ireland had united, for the better promotion of their common object, and had chosen a body of forty-eight persons, denominated “ The Boston Directory of the Eriends of Ireland; ” that this body had met and chosen a chairman, secretary, and treasurer, and the defendant was thus appointed treasurer.
Then the question recurs, to whom was the money paid, by whom was it received, and who were to accomplish and carry into effect the purpose of the contributors, by the application of the money raised ? It seems manifest that such application of the money was to be made by the body of forty-eight, appointed as an administrative body for the purpose, and that the chairman was the agent of the contributors, in the first instance, to receive the money, and the treasurer to take and keep it, subject to the disposal of the directory. In legal effect, therefore, it would seem that the money was received by the directory. This was a numerous body of trustees, certainly, and not very regularly constituted; but they were such as the contributors, having the power of disposal over their own money, chose to select. The general purposes to be accomplished by the directory, in the application of this money, are shadowed forth in the address, which is made part of the case.
The defendant did not receive the money on any trust or condition, to account with the plaintiffs ; because, with their *166 consent and by their appointment, he is to pay it out, under the order and direction of the directory, and to be accountable to them for it.
Again; the whole proceeding looked to associated and continued action. One object seems to have been, to assist the Irish people with arms. But how? The defendant was intrusted with no power to lay out the money in arms, or to send them to any body. The parties proposed to act in concert with other parties, having the same common object in view.- The contributors looked to the aggregate body, to direct the application of their donations. By their order and direction, the defendant did invest the money in stocks, and thereby parted with the possession of the money. When a committee of the directory was chosen to act, and there was no by-law or other provision to regulate the exercise of their authority, the vote of a majority must be deemed the act of the body. Then, the money having been invested pursuant to such vote, before any revocation of the authority given by the defendant, if, as maintained by the plaintiffs, he had any power of revocation, the defendant had no money of the plaintiffs when they made their demands and brought their actions.
The vote of the plaintiffs, or some of them, in the negative, cannot avoid this result; by voting at all, they tacitly submitted to the jurisdiction of the committee, and admitted their authority to decide, in a case where the act of the majority was the act of the body.
But there is another view of the subject, which seems to us to be entirely decisive. It is quite clear, that these plaintiffs, with many other persons, put in their respective sums as contributions to a common fund for a designated purpose. The terms import this; “ they subscribed,” “ they contributed ; ” all implying that the donations of each were parts, the whole of which were to form a common fund. In fact, these sums were mixed and blended together, and invested in a common fund. Then they were necessarily liable to some incidental charges, contemplated by the establishment of the directory ; expenses of delegates to other places, for the general purpose of agitating.
*167 Such being the character of the fund, the right of each individual to any portion of it, after the failure of the purpose for which it was raised, if any surplus should remain, was a right to a proportional part of such surplus, after deducting all charges and expenses, and all losses sustained by bad investment, or otherwise. It would require an account to be taken amongst all the contributors, having equal rights to such surplus, to ascertain the proportion to which each of these plaintiffs would be entitled; and such an account cannot be taken in an action at law for money had and received.
It seems obvious to the court, therefore, that the contribution of each of these plaintiffs was not a simple deposit with the defendant, to hold on any condition or contingency, to be judged of or determined by him; or, to hold and apply upon the simple happening of a future event, which event has not happened; or, upon any trust or confidence reposed in the defendant, which he has failed to perform; and, therefore, it is not within the principle, that, when money has been received of another, for a purpose or on a consideration which has failed, on which the authority on which it was deposited may be revoked, and, after demand and refusal of repayment, it may be recovered back in an action for money had and received. Judgment for the defendant, in each case