ARTHUR W. WHITEHOUSE, ALICE J. DARR, MINNIE R.
    BROADIE, MARY A. BOYD, Appellees, v. EDMUND ISAAC
    WHITEHOUSE, Appellant; FRANCIS WHITEHOUSE JR.,
    ELIZA HARMER WHITEHOUSE, Appellees.

**Wills**:  MISTAKEN DESCRIPTION: IDENTIFICATION BY EXTRINSIC EVI-
    DENCE. While extrinsic evidence is not admissible to supply
    an omission or cure a defect in a will, yet it may be received
    for the purpose of identifying the subject of the devise; as.
    where the testator in fact owned one subdivision of a prop-
    erly described section of land but devised another, extrinsic
    evidence is admissible to identify the tract he in fact owned
    for the purpose of aiding in ascertaining his intent.

*Appeal from Polk District Court.*— HON. JAMES A.
        HOWE, Judge.

TUESDAY, NOVEMBER 12, 1907.

FRANCIS WHITEHOUSE, SR., died testate in England, March 12, 1905, seised of the N. ½ of the N. E. ¼ of section 29, township 80 N. of range 25 W. of the Fifth P. M. He left, him surviving, Eliza, his widow, residing in England, and children, being the parties to this suit. His estate both in England and in this country has been fully settled. His will, executed in 1880, was admitted to probate, and, in so far as material to this controversy, was in words following:

First, I give and devise to my son, Francis Whitehouse, Jr., his heirs and assigns, forever the southwest quarter of the southeast quarter and the south half of the northwest quarter of the southeast quarter of section 17, township 80, range 25, Polk county, Iowa.

Second, I give and devise to my son Edmund Isaac Whitehouse, his heirs and assigns, forever the north half of the northwest quarter of section 29, township 80, range 25, Polk county, Iowa; subject to the payment by him of the sum of $500 — which is hereby made a charge upon said real estate so given and devised to him — in equal sums to my said sons, Francis Whitehouse, Jr., and Arthur William Whitehouse and which I hereby direct shall be paid within two months after my death.

Third, I give and devise to my son Arthur William Whitehouse, his heirs and assigns, forever the southeast quarter of the southeast quarter of section 17, township 80, range 25, Polk county, Iowa.

Edmund Isaac Whitehouse set up in his answer that there was a mistake in the second clause in the description of the land, in that the N. ½ of the N. E. ¼, instead of the N. ½ of the N. W. ¼, was intended to be devised. He prayed that the will be so construed, and title thereto quieted in him. This relief was denied, and decree entered establishing the respective shares of the widow and heirs or

of those to whom these had conveyed. Edmund Isaac Whitehouse appeals.— *Reversed.*

*Brown & Dille,* for appellant.

*Bowen & Brockett,* for appellees.

LADD, J.— The second clause in the will described the land devised to testator's son Edmund Isaac Whitehouse as the N. ½ of the N. W. ¼ in section 29, township 80, range 25 W. Fifth P. M. Neither then, nor at any other time, had the testator been the owner thereof or of any interest therein. It was owned by and then in possession of another. But he then owned the N. ½ of the N. E. ¼ of the same section, which he acquired in 1876, and this was the only parcel owned by him in Polk county, Iowa, and probably in America, at the time of his death. At the date of the will, he also owned the forty acres devised to Arthur William Whitehouse and the sixty acres devised by Francis Whitehouse, Jr.; but these were conveyed by him to Francis Whitehouse, Jr., in 1893. The evidence disclosed that the testator, having had some trouble with his wife prior to 1870, came to this country that year with his three sons, who seem to have sided with him. His first wife died in 1877, and, upon marrying again in 1880, he returned to England. At that time Francis was twenty-seven, Edmund twenty-five, and Arthur sixteen years of age. He had acquired the three tracts of land only, and these had been somewhat improved. Being a jeweler, and not a practical farmer, he did little of the work, relying upon the two eldest sons, Francis and Edmund, to perform most of the labor required. Before leaving for England, he executed a lease to them of the forty and sixty acre tracts correctly described and of the " north half of the southeast quarter of section 29 " not owned by him, at the annual rental of $316 with other conditions, including payment of taxes, not neces-

sary to be mentioned. The sons took possession of the land in controversy with the other parcels and farmed all together five years, when Edmund assigned his interest in the lease to Francis, who continued in possession until his father's death.

Under the circumstances disclosed by the record, there can be no doubt but that it was the intention of the testator to devise the land in controversy to his son, Edmund. The will disposed of the only other parcels of land to his remaining sons. He had no land other than the N. ½ of the N. E. ¼ of section 29. Edmund had a claim on his bounty equal to that of Francis. Moreover, Edmund had done most of the work in breaking and improving this land. In making his will he is presumed to have intended to dispose of all his property, and certainly the presumption ought to prevail that he did not intend in his last testament to pretend to leave property to his son to which he had no title or claim, especially when burdened with the payment of a legacy, as in this case. True, extrinsic evidence may not be received to supply an omission or cure a defect in a will, even though occurring through mistake or inadvertence. *Fitzpatrick v. Fitzpatrick,* 36 Iowa, 674. The instrument alone speaks the testator's intent, but the rule is universal that evidence may be received tending to identify the subject or person described. In *Stewart v. Stewart,* 96 Iowa, 620, the description in the will was the S. ½ of the N. E. ¼ of section 30, which he did not own, and the only land the testator had, not included in the will, was the S. ½ of the S. E. ¼ of that section, and because the will purported to divide his estate among all his children, burdening that to different ones with legacies to others, and the particular tract was so burdened the court concluded that testator intended to leave the S. ½ of the S. E. ¼ of the section to the devisee named. Speaking through Robinson, J., the court said: " The evidence shows that the description of the land is in part wrong. After rejecting the erroneous portion, the remain-

der describes the S. ½ of the E. ¼ of section 30.    The section contains two tracts, which may be properly spoken of as ' the east quarters,' and under the rules of interpretation cited we are of opinion that extrinsic evidence may be received to show what quarter was intended by the testator." If this is sound, there can be no question as to the conclusion which should be reached in the case at bar for, by omitting the word " west," erroneously used in the description, it would read the N. ½ of the N. ¼, and extrinsic evidence was admissible to show to which of the north quarters the description should be applied.    The decision followed *Eckford v. Eckford,* 91 Iowa, 54, where the land was described in the will as S. E. ¼ of section 14. Testatrix did not own that quarter, but did own the S. W. ¼ of that section, and the court, after quoting the rule as laid down in *Christy v. Badger,* 72 Iowa, 581, directed attention to the fact that the county and section was correctly stated, and description to part only was false, and proceeded:    " If the language had been ' one quarter of section 14, township 98, range 17 ' the estate would have passed because she described the land as being owned by her, and this language is sufficient to lead to an identification of the land actually owned by her.    This identification may be made by extrinsic evidence.    It involves what may be called a latent ambiguity."

We are not inclined to take the view of Kenne, J., in *Stewart's* case, that it is an extension of the doctrine there announced, for the presumption should prevail that the testator is undertaking in his will, without saying so in express terms, to dispose of property which he believed belonged to him, rather than to belong to another.    If so, the description of the property devised as his own is entitled to little or no significance.    The *Eckford* case was determined on great consideration after a rehearing had been granted.    It is inconsistent with much that was said in *Fitzpatrick v. Fitzpatrick,* 36 Iowa, 674, though the relief

there sought was the correction of the will, while here we are merely asked to say what property the testator intended to devise in one of the clauses of the will. It has the support of *Patch v. White,* 117 U. S., 210 (6 Sup. Ct., 617, 29 L. Ed., 860), where the description as "numbered lot 6 in square 406" was held to be ambiguous and extrinsic evidence received to show that lot 3 in square 406 was intended though this was by a divided court. The tendency of later decisions is in harmony with those of this court as will appear from an examination of *Decker v. Decker,* 121 Ill., 350 (12 N. E., 750), and *Whitcomb v. Rodman,* 156 Ill., 122 (40 N. E., 553, 28 L. R. A., 149, 47 Am. St. Rep., 183), apparently overruling *Bingel v. Volz,* 142 Ill., 225 (31 N. E., 13, 16 L. R. A., 321, 34 Am. St. Rep., 64), *Huffman v. Young,* 170 Ill., 296 (49 N. E., 572), explaining that Bingel's case was an application to reform a will; *Seebrock v. Fedawa,* 33 Neb., 413 (50 N. W., 270, 29 Am. St. Rep., 488), *Priest v. Lackey,* 140 Ind., 399 (39 N. E., 54), *Winkley v. Kaime,* 32 N. H., 268; *Riggs v. Myers,* 20 Mo., 239. See, also, *Flynn v. Holman,* 119 Iowa, 731.

A latent ambiguity arises dehors the will. To establish it courts must listen to extrinsic evidence, not for the purpose of adding to or detracting from the will, but to ascertain the existence or nonexistence of the latent ambiguity. In no other way can such an ambiguity be shown. And, if so established, it should be added that only by resorting to the same kind of evidence — extrinsic — can it be removed. On the face of the third clause of the will, the subject-matter is clear; but, upon inquiry, a part of the description is found to be false. The parcel of land named did not belong to the testator. If, by striking from the description of the premises devised the part which is false, enough remains in the will, interpreted in the light of surrounding circumstances at the time it was executed, to point out and identify the premises intended by the testator to be devised, the ambiguity is removed, and the disposition of

the property as thus indicated will be upheld.    The facts are as diverse as the cases presented, and while reference to property by the use of the possessive pronoun in some instances may be significant, other circumstances may prove quite as controlling, and those to which we have alluded leave no possible doubt as to the deceased's intention of devising the eighty acres of land in dispute to the appellant.

The district court erred in holding otherwise, and for this reason its decree is *reversed*.