ELLSWORTH COLLEGE, Appellee, v. JOHN J. CARLETON et al.,
Appellants.

WILLS:   Construction—Ambiguous Clause—Aids to Construction.
The following principles of testamentary construction are recognized:

1. Ambiguous clauses may be aided, (a) by a consideration of the peculiar relations existing between the testator and the object of his bounty, and (b) by the surrounding and attending circumstances.

2. Actual intention overrides words, even to the extent of discarding them, or supplying others, or rearranging clauses.

3. A word when found more than once in a will will be presumed to have been used in the same sense, nothing to the contrary appearing.

4. If intention be doubtful, that construction which approximates closest to the statutory order of distribution will be preferred.

PRINCIPLE APPLIED: A testator had been much interested in a college, and had financially contributed to its support. A year prior to his death, the college urgently needed money. Effort to secure it failed. Finally, the testator advanced it—$9,000— and in return the college gave him its note and real estate mortgage, *which he recorded*. This note was the only obligation of the college that testator had ever held, and was found among his papers after his death. Subsequent to the receipt of the note, testator executed his will. He devised $10,000 to the college, on condition that the college raise a like amount from other sources, and then provided: *"Contributions heretofore made to said college, which are a matter of record, will form no part of the above provision, and will be canceled."* The devise was carried out by the college's raising the required amount. The question arose: Did testator intend to cancel this $9,000 note? Did he refer to *public* records? Did he use the word "contributions" in the sense of "loans?" What did he intend by "cancel?" Among his papers was a *private* "record" in his handwriting of money paid out, including contributions to the college and charges for money paid to the college, all prior in date to the date of the will. There was no proof that some of these items had been paid by the college. The college also kept a like record of its receipts from contributions. In other portions of the will, the word "contributions" was accurately used, in its ordinary sense of "giving something for a common purpose." Testator was a dealer in real estate and a maker of loans. In the will appeared a private bequest of a mortgage on property of the devisee, with directions to the executor *to release the same of record*. Nothing like this was provided as to the $9,000 mortgage. *Held* that most probably testator referred to his own private records and his charges noted therein, and to the similar records of the college; that the word "contributions" was not used in the sense of "loans," nor the word "cancel" in the sense of "release" of a public record; that, at best, the interpretation contended for by the college was as doubtful as that contended for by the executor, and, as the closest approximation to the statutory order of distribution, it must be held that the $9,000 note was not canceled.

*Appeal from Hardin District Court.*—E. M. McCALL, Judge.

FRIDAY, DECEMBER 15, 1916.

SUIT praying for the construction of the will of J. H. Carleton, deceased, and the cancellation and surrender ·to plaintiff of a note and. mortgage executed by it to him. Decree was entered as prayed. The defendants, as executors of his estate, appeal.—*Reversed.*

*Maurice O'Connor, George H. Bradshaw* and *Edgerton & Dohs,* for appellants.

*Nagle & Nagle,* for appellee.

LADD, J.—J. H. Carleton died testate, May 7, 1912. His will, prepared by himself, was executed November 3, 1911, and duly admitted to probate. After directing the payment of all legal obligations, providing for wife, should she survive, each of his three children, and making bequests to others, including an orphanage, and referring to a previous gift to another institution, in Section 11 he thus remembered Ellsworth College:

WILLS: construction: ambiguous clause: aids to construction.

"To Ellsworth College, Iowa Falls, Iowa, a conditional gift of $10,000 is provided for and thus set forth, whenever a sum equal in amount and value shall be obtained from any source, designed to aid .and further the interests of said college; the contribution here named shall be valid and binding, with the understanding that the homestead located on part of the East 1/3 of Block A, North Addition to Iowa Falls, Iowa, fronting on Main Street 110 feet north and south, and on Pine Street 190 feet east and west, running back to college property, represents the one half of said sum of five thousand dollars, and the remaining half to be paid from my estate as soon as the settlement of estate will permit, provided the terms upon which the gift is made are

fully complied with, and with the further understanding that, if my wife, Sarah A. Carleton, shall survive me, the homestead above named shall continue in her possession and control till her decease, unless for reasons satisfactory to her she shall determine otherwise. If said property shall become a valid gift through compliance of imposed conditions, it shall be known as the gift of J. H. Carleton and Sarah A. Carleton to Ellsworth College, and known as the 'Carleton Home.'

"Contributions heretofore made to Ellsworth College, which are a matter of record, will form no part of the above provision and will be canceled. A reasonable time will be given, or one year from the date of my decease, in which to secure the amount necessary to make the above gifts valid and binding. This important institution which the founder did so much for, and upon which so much depends as a contributor to the prosperity of Iowa Falls, deserves a large place in the affections of the people of this community, and unless it can command their interest and good will and help, it can never reach the place in the public estimate it so richly deserves."

A conditional gift was then made to the "Domestic School of Arts," and the residue of the estate left to his wife and three children. It then directed the erection of monuments in memory of his brothers, recommended the continuance of his business (real estate and loan) for one year, nominated trustees, and closed with this advice:

"Be thorough and true at every step. Let all be done according to the most correct methods and with promptness in reaching the end desired. Among other public, let the interests at Ellsworth College have its full share and treat it as it deserves, kindly and liberally."

It appears that, on April 12, 1911, the plaintiffs, as trustees of Ellsworth College, borrowed of decedent the sum of $9,000, and executed to him their promissory note therefor, and a mortgage on real estate of the college, securing its

payment. Appellant contends that, by virtue of the following clause of the will, the above mentioned note and mortgage were discharged:

"Contributions heretofore made to Ellsworth College, which are a matter of record, will form no part of the above provision and will be canceled."

This is denied by the executors. On the trial, it was made to appear that the conditions of the gift of the homestead had been met by the college, and that said homestead had been conveyed to it, and it had been paid the $5,000 in money as required; that no obligation of the college, other than the $9,000, was held by the testator or ever had been. The mortgage was found in his vault, subsequent to his death, and also a book, in which he "kept a record of the transactions that he had and the money he had paid out," including the sums of money he contributed to Ellsworth College, and this was in his handwriting. Therein, on November 19, 1909, it is charged with "a check to Mrs. Mears Library special fund, $1,000." On December 19, 1910, it is charged with check for $1,000 entered to its credit at the First National Bank of Iowa Falls, to pay teachers. On January 5, 1911, "Ellsworth College for laboratory supplies and labor, to note paid given trustees December 5, 1910, $792.65."

The executor, a son of testator's, testified that:

"The circumstances in regard to this advancement was that the college was imperatively in need of the money to meet the demands of labor performed and purchases made, and it is held against the college as money advanced."

The president of the college thought that this last item was a credit, and, though under the impression it had been repaid, could not so testify. Letters of testator and replies thereto indicated that he made the $9,000 loan only after failure to negotiate the same with someone else.

It appeared further that "the college kept a record of what had been given to it," and that "the president of the

college keeps this record;" that testator was an educated man, had been a preacher, and was experienced in financial affairs, especially in making loans. Such is the record on which the district court entered a decree cancelling the mortgage, and ordering the executors to surrender the note and mortgage to the trustees of the college. It is apparent, because of the ambiguity of the clause quoted, that resort may be had to extrinsic evidence in ascertaining the testator's intention. To aid therein, his relations with the college, and the surrounding circumstances at the time the will was prepared, may be taken into consideration. His intention having been ascertained, the mere matter of wording will not be permitted to interfere with carrying it out. To accomplish this, words are sometimes discarded as surplusage, others supplied, and words and even sentences transposed. *Stewart v. Stewart,* 96 Iowa 620, 624; *Jordan v. Woodin,* 93 Iowa 453, 460; *Eckford v. Eckford,* 91 Iowa 54; *Whitehouse v. Whitehouse,* 136 Iowa 165, 170.

In other words, the intent of the testator is to be ascertained from the terms of the will, in connection with other legitimate sources of information, and, when ascertained, will, in the absence of some insurmountable obstacle, be carried into effect. The law favors a construction which will give some effect to every provision contained therein, and an inquiry of this kind starts out with a predilection favoring the discovery of some purpose for inserting the clause under consideration. It is argued by counsel for appellees that by "matter of record," testator must have had public record in mind, and have used the word "contributions" as synonymous with "loans;" and, as the note and mortgage were the only obligations of the college held by him and of record, he must have been speaking of these; and, if so, the evidence adduced should be held to have rescued the clause under consideration from the fate of being declared meaningless, and construed as bequeathing these instruments to the college. But this conclusion involves too much of assump-

tion and conjecture; for, with all the evidence, it remains at least doubtful what testator meant by the words "contributions" and "record," and the clause is not in the language likely to have been employed by him in making a bequest. "Contribution" is defined by the lexicographers generally, as by Webster, as meaning "to give a part to a common stock; to lend assistance or aid; to give something to a common purpose; to have a share in any act or effect;" and the courts generally have adopted this definition. *Parks, Admr., v. American, etc., Society* (Vt.), 20 Atl. 107; *Citizens' R. Co. v. Creasy* (Tex.), 27 S. W. 945; *Brown v. Thompkins,* 49 Md. 423; *Murray v. McHugh,* 63 Mass. 158; *Mack v. Wurmser,* 135 Mo. 58; *People v. Tuthill,* 31 N. Y. 550.

The word is peculiarly applicable to gifts for the establishment and maintenance of colleges and institutions generally maintained by gifts of charitably disposed persons, and was used in this sense by the testator, in referring to the gift of the homestead and $5,000 in money. A word when found more than once in a will is presumed to have been used in the same sense, unless the contrary is indicated by the context. *In re Estate of Stumpenhousen,* 108 Iowa 555; *Roskrow v. Jewell,* 154 Iowa 634.

Surely there is nothing in the context indicating that testator, who made an accurate use of words elsewhere in the instrument, mistook the meaning of "contributions" and employed it as a misnomer for "loans." His occupation, the real estate and loan business, would seem to negative any such inference. Though not a lawyer, he separated his will into 17 paragraphs, each containing connected subject-matters only, and specifically described, with unmistakable certainty, every devise or bequest, as well as the beneficiary intended. In Paragraph 5 thereof, he gave to his only daughter, naming her, "a mortgage and tax encumbrance I hold on the W½ of Lot 4 in Block 7, Bliss Addition to Iowa Falls, Iowa," and authorized "my executors to release same of record, if not done prior to my decease." Had he intended

a gift of this mortgage in question in this suit, would he not have directed its release? Moreover, in Section 10 of the will, he manifested a disposition to recall former benefactions; for therein he relates that:

"To Cornell College, at Mt. Vernon, Iowa, I have given obligations for $10,000, as a token of my interest in that school and in the cause of Christian education, and which form no part of another gift to aid in the liquidation of current indebtedness several years."

This is followed merely by the suggestion that any unpaid portion thereof be satisfied by the executors, and this with securities left by him. Was the clause now under consideration inserted for any other purpose? He was making an important contribution to an institution in which he was much interested; it was natural that he should allude to what he had previously contributed thereto. Again, it is all but inconceivable that this man, while so careful to require the college to raise an equal amount elsewhere as a condition to the gift of the homestead and $5,000, and that the former be named in his memory, should have tossed, as it were, to it as a gift this mortgage of $9,000, without mentioning or describing it, merely alluding to it as of a class to which it did not belong. There was no evidence tending to show that decedent ever regarded the note and mortgage otherwise than as evidence of a loan. The circumstances of furnishing the trustees the money and taking these papers, evidence his reluctance in making the loan, and exclude any inference that a contribution was then intended. The language of the clause under consideration does not purport to make a gift, but rather assumes that others have previously been made, and undertakes to guard against confusing them with that which is the subject of Paragraph 11. This harmonizes with the extrinsic evidence adduced; for "contributions heretofore made" may well have had reference to the two gifts of $1,000 for library and teachers' salaries, and possibly to that of $792.65 for laboratory material and labor,

if not repaid, entered in his book of accounts as charges against the college. These might properly have. been designated as "contributions," using the word in the plural. sense; while he probably would have referred to the loan in the singular, and to it as such, rather than as a gift or contribution. These could have been excluded from forming "a part of the above provision," while a $9,000 contribution could not have been a part, as it exceeded the conditional gift, aside from the homestead, provided for. These items were, in a sense, "matters of record," both in his account book and the record of the college contributions kept by the president. Had the testator had reference to the record of the mortgage in the county recorder's office, he probably would have directed the executors of his estate to release or satisfy. Being entirely familiar with the manner of discharging mortgage liens of record, it is not at all likely that he would have made use of the word "canceled" in connection with the voluntary release or satisfaction thereof. By "cancel" is meant, according to Webster, "to cross out and deface, as the lines of a writing, or as a word or factor . . . ; to mark out by a cross line; to strike out . . . to annul or destroy; to revoke or recall." In saying that the contributions "will be canceled," he may have referred to the charges on his book, or, more likely, to these as matters of the irrevocable past; for "contributions," not their record, are to be canceled. Nor is there ground for holding that by "record" testator meant "public record." The word is of wide application, and may as well have referred to an account book, which is but a record of past transactions. According to the Century Dictionary, "record" is "an account. of any facts or proceedings, whether public or private, usually entered in a book for preservation; also a book containing such copy or account." As decedent had been a minister of the gospel, he may have employed the word in the scriptural sense, illustrated by Job's statement: "My record is on high." We are inclined to regard the expression, "which are

a matter of record," as descriptive of the contributions as past and completed transactions, and "will be canceled," as that they will be disregarded or overlooked, in dealing with the conditional gift being made. Whether or not·this·be so, enough has been said to indicate that the interpretation contended for by appellee is at least quite as doubtful as that urged by appellants; and in such a case, the rule prevails that that interpretation is preferred which approximates closest to the statutory order of distribution. *Miller v. Hirsch* (La.), 34·So. 435. Or, as summarized in 40 Cyc. 1412:

"Where any ambiguity exists in a will unless there is a manifest intention to the contrary, the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be·applied as an aid in construing the will."

See *Sandford v. Blake* (N. J.), 17 Atl. 812; *Graham v. Graham* (W. Va.), 48 Am. R. 364.

We reach the conclusion that neither the will· alone nor in connection with extrinsic evidence adduced, warranted the interpretation of the clause in question ·as intended to bequeath the note and mortgage to the Ellsworth College. The petition should have been dismissed.—*Reversed.* .

· Deemer, Gaynor and Salinger, JJ., concur.