WILL OF PRANGE: STATE, Appellant, vs. SECURITY NATIONAL BANK, Executor and Trustee, and another, Respondents.

*May 10—June 20, 1932.*

For the appellant there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, and oral argument by *Mr. Seibold* and *Mr. Conway.*

For the respondents there was a brief by *Bowler & Bowler* of Sheboygan, attorneys, and *Miller, Mack & Fairchild* of Milwaukee of counsel, and oral argument by *Paul R. Newcomb* of Milwaukee.

NELSON, J.   Eliza Prange died on August 12, 1928, possessed of an estate the clear net market value of which was $406,034.65.   By her will she provided for the payment of her just debts and funeral expenses, directed the manner of selling her stock in the H. C. Prange Company, bequeathed $1,000 to each of her nephews and nieces, devised the life use of her homestead to her sister, Anna Prange, and provided to whom and for what price it might be sold after the death of her sister.   By paragraph fifth of her will decedent bequeathed to Security National Bank, trustee, the sum of $25,000 upon certain trusts.   The material provisions of said paragraph are as follows:

"The net income from such trust fund shall be accumulated and paid at least annually, in the following manner:

"Five-tenths (5-10) thereof to the H. C. Prange Company Mutual Aid Society of Sheboygan, Wisconsin, if in existence at the time of my death, to be used by said Aid Society to defray the cost of room rental at a hospital for

members of the society who may be in need of hospital care and attention. . . .

"This trust shall terminate absolutely twenty years after the date of my death, and my said trustee shall thereupon pay to each of the three organizations mentioned in this, the fifth clause of my will, the same *pro rata* share of the principal as said organizations have received out of the income."

The H. C. Prange Company's Employees' Mutual Aid Society is an unincorporated society formed for the purpose of creating a fund out of which to pay certain sick, accident, and death benefits to its members. Only employees of the H. C. Prange Company may become members of the society. Any one upon accepting employment by the company becomes a member of the society. Membership dues are paid quarterly, being deducted from salary, and consist of two classes—Class AA being ninety cents per quarter and Class A sixty cents per quarter. Any member in good standing who is taken sick is entitled to certain weekly benefits. If a member is compensated under the workmen's compensation act he is entitled to no benefits from the society. If a member is sick continuously for one year or more he ceases to draw regular benefits. Special provisions in such a case must be made by the society at the annual meeting. A death benefit of $50 is paid.

By paragraph sixth of her will decedent bequeathed and devised to Security National Bank, trustee, the residue of her estate as trustee upon certain trusts. The material provisions of that paragraph are as follows:

"Sixth. All the rest, residue, and remainder of my property, real, personal, and mixed, and wherever found, I give, devise, and bequeath to Security National Bank, trustee, of Sheboygan, Wisconsin, as trustees, upon the trust hereinafter prescribed and defined:

"My said trustee shall take, receive, hold, administer, collect, invest, and reinvest said trust fund, and collect

and apply, as herein prescribed, the rents, issues, income, and profits thereof. . . .

"(a) One-half (½) of the corpus thereof shall be set aside by my said trustee for the establishment and maintenance of another hospital in the city of Sheboygan, Wisconsin, provided, however, and it is an express condition of this bequest for such another hospital, that no part thereof shall be paid or applied by my said trustee for that purpose until and unless there has been deposited in the Security National Bank, of Sheboygan, Wisconsin, by those interested in establishing such another hospital in the city of Sheboygan, Wisconsin, the sum of one hundred thousand ($100,000) dollars in cash as their contribution toward the establishment of such another hospital.

"If such a hospital shall not have been organized and established within ten years after the date of my death, this provision of my will shall be considered null and void, and the share of the residue of my estate herein provided to be applied for the establishment of such another hospital shall be added to the amount specified in item B of this the sixth clause of my will and be disposed of in the same manner and upon the same conditions as therein set forth.

"(b) The remaining one-half (½) of the corpus of said trust shall be held by my said trustee for a period of twenty years after the date of my death, in accordance with the conditions and terms of this trust as hereinbefore set forth.

"The income therefrom shall be accumulated and disbursed for the benefit of the following named organizations:

"One-fifth (1-5) thereof to the Lutheran Altenheim Society of Wisconsin, a Wisconsin corporation, located at Wauwatosa, Wisconsin.

"One-fifth (1-5) thereof to the Evangelical Lutheran Kinderfreund Society of Wisconsin, a Wisconsin corporation, located at Wauwatosa, Wisconsin.

"One-fifth (1-5) thereof to the Evangelical Lutheran Home for Feeble-Minded, a Wisconsin corporation, located at Watertown, Wisconsin.

"One-fifth (1-5) thereof to the Evangelical Lutheran Sanatarium Association, a Colorado corporation, of Den-

ver, Colorado, operating what is commonly known as Wheatridge Sanatarium.

"One-fifth (1-5) thereof to the Evangelical Lutheran Synod of Missouri, Ohio, and other states.

"At the expiration of twenty years from the date of my death this trust shall terminate, and the corpus of said trust estate then remaining in the hands of my said trustee shall thereupon be paid to the following organizations, in equal shares"—(one-fifth to each of the beneficiaries just mentioned).

After decedent's death the Sheboygan Hospital Association was organized. The articles of incorporation were filed and recorded in the office of the register of deeds of Sheboygan county on December 12, 1928. On September 9, 1929, the association deposited $100,000 in the Security National Bank to comply with the requirements of paragraph sixth of the will. On November 10, 1929, the bank, as trustee, paid to the association the sum of $190,688.13, being one-half of the residue of the estate, in compliance with the will and in accordance with the final decree of the county court. The association was organized under the general corporation laws of this state (ch. 180, Stats.) as a non-stock corporation. Art. III of the articles of incorporation provides that "no dividends or pecuniary profits shall be declared or paid to the members thereof." The business and purposes of the association are set forth in art. IV as follows:

"To establish, build, construct, equip, conduct, operate, and maintain in the city of Sheboygan, Wisconsin, an institution or hospital for the general treatment, care, and relief of sick, injured, suffering, infirm, or indigent persons."

Art. V relates to membership, and the first paragraph thereof provides:

"Any adult person who enjoys communicant membership of a Lutheran church in the county of Sheboygan affiliated

with the Synodical Conference, is eligible for membership in this corporation."

The statutes involved are as follows:

"Sec. 72.01, Stats. 1927. *Subjects liable.* A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, except county, town or municipal corporations within the state, for strictly county, town or municipal purposes, and corporations of this state organized under its laws or voluntary associations organized solely for religious, charitable or educational purposes, which shall use the property so transferred exclusively for the purposes of their organization, within the state, in the following cases: . . .

"Sec. 72.04, Stats. 1927. *Exemptions.* . . . (1) All property transferred to municipal corporations within the state for strictly county, town or municipal purposes, or to corporations of this state organized under its laws, solely for religious, [humane], charitable or educational purposes, which shall use the property so transferred exclusively for the purposes of their organization, within the state, and all property transferred to banks or trust companies of this state, as trustees, in trust exclusively for public, religious, [humane], charitable, educational, or municipal purposes, in this state, shall be exempt."

The State contends that the county court erred in determining that the transfer to the bank, as trustee, under the sixth paragraph of the will, of one-half of the residue of said estate for the establishment of another hospital in the city of Sheboygan, Wisconsin, was exempt under the inheritance tax laws of this state. The respondent contends that the county court erred in determining that the transfer to the bank, as trustee, under the fifth paragraph of the will for the use and benefit of the H. C. Prange Company Mutual Aid Society was not exempt under the inheritance tax laws of this state.

The questions for determination are, therefore, (1) Is the bequest under paragraph sixth of the will exempt from

an inheritance tax under sec. 72.04 (1), Stats. 1927, as a transfer to a bank in trust exclusively for charitable purposes in this state? (2) Is the bequest to the H. C. Prange Company Mutual Aid Society under the fifth paragraph of the will exempt from an inheritance tax under sec. 72.04 (1), Stats. 1927?

Prior to the year 1927 sec. 72.04 did not contain the following language: "And all property transferred to banks or trust companies of this state as trustees in trust exclusively for public, religious, charitable, educational, or municipal purposes in this state shall be exempt." On April 5, 1927, this court filed its opinion in *Estate of Price,* 192 Wis. 580, 213 N. W. 477, in which it was held that a transfer of property to a trust company, in trust for the benefit of needy children, was not exempt from inheritance taxation because the trust company therein was not a corporation organized solely for religious, charitable, or educational purposes, but was a corporation organized for profit under the general laws of this state. Immediately following that decision the legislature enacted ch. 416, Laws of 1927, which added the clause hereinbefore recited exempting transfers to banks or trust companies for the purposes therein mentioned. The very prompt enactment of that chapter by the legislature rather strongly indicates that the legislature intended that the charitable purpose of a bequest, rather than the channel through which it passes, should determine whether a bequest is exempt from an inheritance tax. The legislature was apparently without concern as to whether property is transferred to a bank or trust company of this state as trustee so long as the purpose of such transfer is one of those enumerated.

The State contends that the transfer to the bank as trustee was not a transfer for any exempt purpose but was merely a transfer of property to it to be paid over to a hospital corporation or institution to be formed in the future;

that a transfer to or for a corporation or institution to be formed in the future is not exempt; that the transfer was not in favor of a hospital corporation or institution to be formed in the future solely for charitable purposes, and that the facts of this case do not bring the gift in trust for the establishment and maintenance of a hospital within the language of sec. 72.04, which specifically enumerates the exemptions from inheritance taxes.

We are unable to give our approval to the State's contentions. It seems clear to us that the undisputed facts show that the transfer of the property to the bank was exclusively for a charitable purpose and that such transfer is exempt. While the language of the will does not specifically direct that another hospital be established and maintained as a charitable institution, it seems perfectly obvious to us that the testatrix intended to provide funds for the establishment and maintenance of such an institution, provided, of course, that other residents of Sheboygan or vicinity manifested sufficient interest in such an institution to contribute $100,000. Looking at the whole will, which disposed of a very considerable estate, it is perfectly apparent that the testatrix was almost wholly animated by benevolent and charitable motives. Of the large estate, she bequeathed to her relatives less than $27,000. A large share of the residue was bequeathed and devised by her in trust for the use of purely religious, charitable, and educational institutions. That decedent intended that the hospital to be established and maintained should be a charitable institution seems entirely free from doubt even though her will did not specifically so provide. The hospital which she had in mind was to be established and maintained by means of her gift, together with $100,000 to be contributed by those whose interest in such an institution was sufficient to induce them to raise that amount of cash "as their contribution." Surely this language is wholly inconsistent with the idea that she

intended to make this very large gift to a hospital which was not to be a charitable institution. It is well known, of course, that there are hospitals which are not charitable institutions, but the great majority of hospitals are so organized and maintained. A hospital which pays no dividends and is largely supported by donations is a charitable institution. *Morrison v. Henke,* 165 Wis. 166, 160 N. W. 173. While decedent did not specifically state that the hospital to be established and maintained should be a charitable institution, it is quite apparent that such was her intention. No one could reasonably contend that if certain residents of Sheboygan had organized a corporation for the purpose of operating a hospital for profit, and had paid to the bank the sum of $100,000, such a hospital would have become entitled to one-half of the residue of the estate. The phrase "as their contribution toward the establishment of such another hospital" unquestionably means that the $100,000 was to be given outright for the establishment and maintenance of another hospital. "Contribution" has a well defined meaning and is peculiarly applicable to gifts made for the establishment and maintenance of colleges and institutions generally maintained by gifts of charitably disposed persons. *Sawyer v. Dearstyne,* 139 N. Y. Supp. 955; *Parks' Adm'r v. American Home Missionary Society,* 62 Vt. 19, 20 Atl. 107; *Ellsworth College v. Carleton,* 178 Iowa, 845, 160 N. W. 222.

We entertain no doubt that decedent clearly intended, by the terms of her will, to provide for the establishment and maintenance of a charitable hospital and not one operated for profit.

In *French v. Calkins,* 252 Ill. 243, 96 N. E. 877, 881, which involved a somewhat similar bequest, it was held that an exclusively charitable trust was created, the court saying:

"The hospital selected must be one offering care and treatment for tubercular patients, and it is inconceivable that the

testatrix intended to make a bequest for the purpose of increasing the dividends of a private hospital conducted for profit. She did not intend, and a court of equity would not permit, the diversion of the funds to such purpose. The name ordinarily implies a public institution, and the word 'offering,' with no condition annexed and connected with a hospital, naturally implies giving, bestowing, or providing free treatment to those suffering from a disease. The trustees are authorized, in their discretion, to select a hospital of that character to administer the fund as a public charity."

The people of Sheboygan who interested themselves in the organization of the association construed the language found in decedent's will as requiring the organization of a charitable institution, and they accordingly organized a corporation which obviously is a charitable institution.

We conclude that the county court was right in determining that the trust estate given to the Sheboygan Hospital Association was exempt from taxation.

Did the county court err in determining that the gift in trust for the benefit of H. C. Prange Company Mutual Aid Society is not exempt from an inheritance tax?

Unless the society is a voluntary association organized solely for religious, charitable, or educational purposes, or unless the purpose of the bequest was exclusively charitable, the transfer of property to it is not exempt. In our opinion the society is not a charitable association, nor was the bequest exclusively for a charitable purpose within the meaning of sec. 72.04. The society is organized to promote the interests of its members, who pay dues to it, and who in return for such dues are entitled to receive the benefits provided by the society. The society is not distinguishable from any other insurance company or association. The society is in reality a mutual benefit association supported by dues and assessments. Such an association is not a charitable association but rather one in the nature of an insurance

company. 11 Corp. Jur. p. 305; 37 Cyc. 931, 932; *Coe v. Washington Mills,* 149 Mass. 543, 21 N. E. 966; *Philadelphia v. Masonic Home,* 160 Pa. St. 572, 28 Atl. 954.

The will provides that after twenty years the trust shall terminate and five-tenths of the trust fund shall be paid to the association. Under the circumstances it cannot be held that the transfer was exclusively for public, religious, humane, charitable, educational, or municipal purposes.

We conclude that the court properly held the bequest in trust for the benefit of the society taxable.

*By the Court.*—Order affirmed.