COURSEY, REGISTER OF WILLS *v.* HANOVER BANK
ET AL., EXECUTORS

[No. 72, October Term, 1954.]

*Decided January 19, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles McC. Mathias, Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the appellant.

*Robert Stinson* and *Frank B. Ober,* with whom were *Ober, Williams, Grimes & Stinson* and *Gibson & Wood* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

Upon a special case stated, the Circuit Court for Queen Anne's County, Maryland, in equity, decreed that no in-inheritance tax was payable to the State of Maryland upon certain devises and bequests to Whitehall Foundation, Inc., a corporation of the State of New Jersey, in the will of George M. Moffett, deceased. The question presented on appeal is whether the corporation is entitled, under the agreed facts, to the exemption allowed by Code (1951), Art. 81, sec. 149. This section exempts from the Maryland collateral inheritance tax, property passing "to or for the use of a corporation, trust or community chest, fund, or foundation, created or organized under the law of the United States or of any State or territory or possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, * * * a substantial part or all of the activities and work of which are carried on in the State of Maryland, and no part of the net earnings of which inures to the benefit of any private shareholder or individual." It is conceded that the Whitehall Foundation, Inc. is organized and operated exclusively for charitable, scientific and educational purposes, and that no part of the net earnings inures to the benefit of any private shareholder or individual. The appellant contends, however, that the Foundation does not qualify for the exemption on the ground that it did not carry on a substantial part of its activities and work in Maryland prior to the death of the testator, and that only contributions and activities prior to death may be considered in determining whether the Foundation qualifies.

George M. Moffett died on December 22, 1951, a resident of Queen Anne's County, leaving a gross estate of some $9,000,000. Under his will he left to Whitehall Foundation, Inc. his property valued at about $6,560,000. Two years before his death the Foundation assumed payment of the balance of his personal commitment to pay $50,000 to Johns Hopkins University, over the five year period from 1949 to 1953, for research work on syphilis.

The payment of $10,000 made by the Foundation in each of the years 1950 and 1951 for this purpose amounted to about 20% of the total contributions of the Foundation in the two years preceding Mr. Moffett's death, and about 9% of its entire contributions from the date of its organization in 1937 through 1951. Between 1939 and 1945 the Foundation also made four small educational loans to Maryland residents. The Foundation was also obligated, at the date of death, to make payments to Johns Hopkins University in two succeeding years.

The major activities of the Foundation, prior to Mr. Moffett's death, consisted of scholarship awards, contributions to needy individuals, and support of research projects in which he was interested at several nationally known universities or hospitals. We think it is quite clear that the contributions and undertakings above mentioned constituted a substantial part of its activities and work, under the rule laid down in *Shaughnessy v. Linguistic Society,* 198 Md. 446. Cf. *Emp. Security Bd. v. Md. Deliveries,* 204 Md. 533, 537. The case of *Clarke v. Union Trust Co. of D. C.,* 192 Md. 127, is distinguishable, for we stated that it was doubtful whether any activities were carried on in Maryland, the only claim being that a few Maryland children had been treated at a hospital maintained by the beneficiary in Philadelphia. The appellee also points out that in addition to bequests of certain present and remainder interests in trust estates and the residue of the estate, the testator left a 1,400 acre farm, "Blakeford," and its stock and equipment, to the Foundation. The manifest purpose of this devise and bequest was to enable the Foundation to continue certain long-range experiments in the breeding and inbreeding of livestock, in which the decedent was interested and which, according to the exhibits in the case, are of national interest and importance. We agree with the Chancellor that these experiments were "scientific" in character. The appellant contends that although the Foundation has, in fact, continued these experiments at a cost of about $31,000 in

1952 and \$34,000 in 1953, these facts cannot be considered, because they occurred subsequent to the date of death. We find no merit in this contention.

In the *Shaughnessy* case, *supra,* we based our decision, in part at least, upon facts relating to the activities of the Society subsequent to the date of death but prior to the date of distribution. Whatever the rule may be in other states, this is in accord with the prior decisions of this Court. We held in *Bouse v. Hull,* 168 Md. 1, and *Hospital v. Dugan,* 146 Md. 374, that the Maryland inheritance tax is upon the right to receive property in possession. In the application of this principle we have held that the tax is based on the value of the property at the time of distribution and not at the date of death, *Downes v. Safe Dep. & Tr. Co.,* 164 Md. 293; that a remainder interest is to be taxed at its value when it vests in possession, *Lilly v. State,* 156 Md. 94, *Fisher, Trustee v. The State,* 106 Md. 104; that income collected after death and prior to distribution is subject to the tax, *Safe Dep. & Trust Co. v. State,* 143 Md. 644; that the tax is payable by and at the rates applicable to persons actually receiving the property in case of renunciation, *Bouse v. Hull, supra,* and in case of a compromise agreement between caveators and legatees, *Hart v. Mercantile Trust Co.,* 180 Md. 218. See also *Rosenburg v. Bouse,* 172 Md. 530. All matters relating to the tax that have come before this Court, with the exception of the applicable tax rate, where a change in rate was held not to be retroactive, *State v. Safe Dep. & T. Co. of Balto.,* 132 Md. 251, have been determined on the basis of the facts at the date of distribution, and we see no reason for a different rule in determining the right of a charitable organization to exemption. Any other view would rule out the exemption as applied to a corporation to be formed, which has been recognized in practice, 35 Opinions of the Attorney General 333, and by the decisions in other states construing similar statutes. *Matter of LeFevre,* 233 N. Y. 138, 135 N. E. 203; *In Re Estate of Curtis,* 88 Vt. 445, 92 A 965; *Estate of Irwin,* 196 Cal.

366, 237 P. 1074; *Will of Prange,* 208 Wis. 404, 243 N. W. 488. Some statutes impose a time limit upon the formation of such a corporation. *Hoenig v. Connelly,* 105 A. 2d 775 (Conn.).

If, as we hold, circumstances subsequent to the date of death may be considered in determining the qualification for the exemption, it is a pertinent fact that on November 13, 1952, the charter of the corporation was amended to provide that "a substantial part of the activities and work of the corporation shall be carried on in the State of Maryland." Counsel for the corporation were also authorized to enter into a legally binding commitment with the State officials to that effect, or to consent to the entry of such a requirement in any court decree. The Chancellor stated that he thought it unnecessary to incorporate such a requirement in the decree, although it would be proper to do so if either party requested it. The corporation, since the date of death, has made a further pledge to the Johns Hopkins University of some $108,000 for research work in infectious diseases, and has paid $20,000 to the Easton Memorial Hospital for its building fund, and $500 to Old Wye Church. The corporation has also authorized the expenditure of at least $35,000 a year for fifteen years in the continuance of the breeding experiments at "Blakeford." Its total expenditures in Maryland from the time of Mr. Moffett's death to April 1, 1954, have amounted to $129,355. The pledges and commitments noted will require the expenditure in Maryland of about 22% of its estimated income during the next four years and about 15% for eleven years thereafter.

The obvious purpose of the exemption statute was to encourage bequests to corporations of the types mentioned, by foregoing the tax of $7\frac{1}{2}\%$, provided a substantial part of the money passing under the bequest could reasonably be expected to be spent for worthy public purposes in Maryland. But there was no provision for an exact *quid pro quo,* nor were corporations organized in other States, or operating on a national basis, ex-

cluded. If, as the Attorney General suggests, the use of the word "substantial" sets up a test that is not precise, or is capable of abuse because the beneficiary is not committed to a future course of action, it is a matter for legislative change, not for judicial legislation. In the instant case the benefits accruing to the State would appear to exceed those dealt with in the *Shaughnessy* case by any test.

Under all the circumstances, we think the Chancellor's decree was correct.

*Decree affirmed, with costs.*