# IN THE COURT OF APPEALS OF IOWA

_____

No. 24-1942
Filed February 11, 2026

_____

**In the Matter of the Estate of Arthur G. Kahler**

**Cynthia Burmeister,**
Appellant/Cross-Appellee,

v.

**Charlotte Bonavia, Individually and as Co-Executor of the Estate of
Arthur G. Kahler,**
Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Kossuth County,
The Honorable Shayne Mayer, Judge.

_____

**AFFIRMED**

_____

Tyler M. Smith (argued) of Smith Law Firm, PLC, Altoona, attorney for
appellant.

Brian L. Yung (argued) and Neven J. Mulholland of Johnson, Mulholland,
Cochrane, Cochrane, Yung & Engler, P.L.C., Fort Dodge, attorneys for
appellee.

_____

Heard at oral argument by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

Beneficiary Cynthia Burmeister contests the district court's construction of Arthur Kahler's will.[1] She contends the court erred by refusing to correct an alleged scrivener's error in the will describing real estate. The court's refusal resulted in property Arthur acquired after executing his will to be distributed through the residuary clause of the will. Upon our de novo review, we affirm the district court's conclusion that the after-acquired property should pass through the residuary clause rather than being devised directly to members of the Burmeister family.[2]

## I.    Facts and Prior Proceedings

Arthur Kahler, a widower with no children, owned farmland in Kossuth County. He died in November 2022, but he executed his last will a decade earlier. His will, dated August 2012, was admitted to probate in December 2022.

That will includes five articles. Important here are articles two and four. Article two devises specific real estate to various families. Article four directs the distribution of the residue of his estate—making bequests to a cemetery, a church, and a community college foundation, and devising the remaining seventy percent of his estate to numerous individuals "in equal shares, per stirpes."

---

[1] Arthur's will refers to "Cindy Bermeister" when devising his property. But, like the parties, we use her correct name. And because several beneficiaries have last names in common, we will use their first names where appropriate.

[2] Proceedings to construe a will are tried in equity. *In re Est. of DeVore*, 574 N.W.2d 917, 918 (Iowa 1997). So we review a district court's construction of a will de novo. *Id.*

Article two contains these five paragraphs.

I hereby give, devise and bequeath my real estate as follows:

A. The East 80 acres of the West 110 acres of the Southwest Quarter (1/4) of Section 10, Township 97, Range 29, Kossuth County, Iowa, to Chad Kollstad and Dawn Kollstad, in equal shares, per stirpes.

B. The Southwest Quarter (1/4) of Section 14, Township 97, Range 29, Kossuth County, Iowa, except the five (5) acre building site located in Section 14; and all my real property located in Section 10, Township 92, Range 29, Kossuth County, Iowa, to Katrina Bermeister, Cindy Bermeister, Alissa Bermeister and Emily Bermeister, in equal shares, per stirpes.

C. 135 acres, more or less, located in Section 23, Township 97, Range 29, Kossuth County, Iowa, to Brandon Laubenthal, Shannon Laubenthal, and Kendra Laubenthal, in equal shares, per stirpes.

D. 60 acres, more or less, located in Section 27, Township 97, Range 29, Kossuth County, Iowa, and the West 110 acres except the East 80 acres thereof in the SW 1/4 of Section 10, Township 97, Range 29, Kossuth County, Iowa, to Tom Kahler and Mike Kahler, in equal shares, per stirpes.

E. 35 acres, more or less, located in Section 33, Township 97, Range 27, Kossuth County, Iowa, to Charlotte Bonavia, per stirpes.

Paragraphs A, B, and D are most significant to the question before us. When he made his will, Arthur owned the West 110 acres of the Southwest Quarter of Section 10, Township 97, Range 29. Paragraphs A and D account for this property by giving 80 acres to the Kollstads and 30 acres to the Kahlers. Paragraph B devises property in Section 10, Township 92, Range 29. But Arthur did not own property in Township 92; in fact, Kossuth County had no Township 92.

After Arthur executed his will, but before he died, he acquired another 40 acres of land in Section 10, Township 97, Range 29. That after-acquired

land was the East 40 acres of the Southwest Quarter of Section 10, Township 97, Range 29. Arthur's will does not specifically account for this property, but article four directs distribution of the remainder of his estate.

In July 2023, Arthur's estate applied for authorization to construe the will and direct disposition of his property. The estate noted the anomaly in paragraph B of article two and asked the court what it meant for the distribution of the after-acquired property. The estate stressed that "no land in Township 92 exists in Kossuth County, which raises the question whether this specific devise simply contains a typographical error or was inadvertently included altogether." It offered three possible distributions:

> (i) give effect to Article Two, [paragraphs] A and D, and the after-acquired portion of the Property passes under Article Four; (ii) give effect to Article Two, [paragraphs] A and D, and the after-acquired portion of the Property passes under Article Two, [paragraph] B; or (iii) all of the Property [is distributed] under Article Two, [paragraph] B in disregard of Article Two, [paragraphs] A and D.

Cynthia responded, urging the court to adopt the second option and amend paragraph B of Arthur's will to read "Township 97" so that the after-acquired property would be distributed to her family. In a supplemental filing, she clarified she only sought the after-acquired property; the devises in paragraphs A and D to the Kollstad and Kahler families were to be undisturbed. The Kahlers concurred with Cynthia's response.

Beyond Cynthia's response, the Burmeisters offered to pay the estate $50,000 to be distributed through article four in exchange for the after-acquired property—valued at $600,000—to transfer through article two, paragraph B. Charlotte Bonavia, in her individual capacity and in her capacity as co-executor of Arthur's estate, resisted.

In May 2024, the district court held a hearing on the estate's application.[3] In analyzing a separate issue, the district court found that Arthur's intent was to devise specific farms to specific families.[4] Under its analysis of the after-acquired property, the court determined that the reference to "Township 92" in paragraph B was "likely a scrivener's error" that should read Township 97 instead. But the court also believed that interpreting paragraph B to read Township 97 would create a "patent ambiguity" in the will, rendering paragraphs A and D inoperative. As the court found, leaving paragraph B as written was necessary to give force and effect to paragraphs A and D. From there, the district court directed the after-acquired property to be distributed under article four.

Cynthia appeals. Charlotte defends the district court's ruling in her capacity as co-executor of the estate. Two members of the Laubenthal family join the appellee's position.[5]

---

[3] The district court held an earlier hearing on matters not before us on appeal. That previous hearing focused on a petition and request for injunctive relief filed by Charlotte as executor and as an individual. The petition named Rose Burmeister, Arthur's sister, as defendant and alleged tortious interference with the bequest and wrongful inter vivos transfers. The court took the issues under advisement and decided it in the same order it decided the issue on appeal.

[4] Among other things, the district court resolved an issue involving Brandon Laubenthal predeceasing Arthur. Arthur's will devised farmland to Brandon and two other Laubenthals in equal shares, per stirpes in article two, paragraph C. The district court found it unlikely that Arthur "intended B. Laubenthal's share to be split up and distributed among the residual beneficiaries of Article Four," and allowed the other Lauthenbals to pay $200,000 to the estate in exchange for the land.

[5] For clarity, we will refer to the appellees as the estate.

## II.  Analysis

Cynthia maintains the district court erred in finding a patent ambiguity would result from fixing the alleged scrivener's error in Arthur's will. Instead, she believes the dispositions in paragraphs A, B, and D of article two can co-exist. To that end, she urges that we "correct" the reference from Township 92 to Township 97 in paragraph B. And then "subtract" the devises to the Kollstads and Kahlers in paragraphs A and D from the devise of "all my real property" to the Burmeisters in paragraph B. With those changes, the forty acres of after-acquired property would be distributed to members of her family.

On the other side, the estate asks us to affirm the district court's decision that the after-acquired property be distributed through the residuary clause of article four. They contend "Arthur's testamentary scheme was to give specific farms he owned at the time his will was executed to specific families." The estate adds: "It makes little sense to suggest that he also intended to give the Burmeister family a farm he might subsequently acquire, but only if it happened to be in Section 10."

To settle their debate, we begin with the "cardinal rule" of will construction: "the intent of the testator is the polestar and must prevail." *Roll v. Newhall*, 888 N.W.2d 422, 426 (Iowa 2016) (quoting *In re Est. of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991)). To ascertain Arthur's intent, we consider, "(a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution and (d) the existing facts." *Rogers*, 473 N.W.2d at 39. We evaluate what he said, not what he meant to say. *Id.* We can't glean a testator's intention from isolated parts of the will; instead, we read the instrument as a

6

whole, giving each part "meaning and operation if possible." *In re Est. of Roberts*, 171 N.W.2d 269, 271–272 (Iowa 1969).

So, under those basic tenets, what does the language of the will reveal about Arthur's intent for devising the farm he bought after drafting his will? In the second clause of article two, paragraph B, he purports to give all his "real property located in Section 10, Township 92, Range 29, Kossuth County, Iowa" to the Burmeisters. Trouble is, that paragraph included a false description of the property Arthur owned.

Both parties agree that the false description created an ambiguity. Ambiguities can be patent or latent. *In re Est. of Lepley*, 17 N.W.2d 526, 529 (Iowa 1945). Here, the ambiguity was latent because the will was clear on its face; only the extrinsic fact that Township 92 didn't exist in Kossuth County created uncertainty about what property was being devised in paragraph B. *See Rogers*, 473 N.W.2d at 39–40; *see also Eckford v. Eckford*, 58 N.W. 1093, 1094 (Iowa 1894). And just as extrinsic evidence may highlight a latent ambiguity in a will, courts may also resort to extrinsic evidence to resolve that ambiguity. *Whitehouse v. Whitehouse*, 113 N.W. 759, 761 (Iowa 1907). With a big caveat, the extrinsic evidence may not add or detract from the will. *Id.* at 760–61. It may only help ascertain the testator's intent from the language used in the will. *Lepley*, 17 N.W2d at 529.

Having tagged it as a latent ambiguity, the next question is whether that false description in paragraph B defeats the devise of the after-acquired property to the Burmeisters. "[A] false description of real estate in a will cannot defeat the devise if, after rejecting the false description, there is a sufficient designation or description of the subject of the devise to lead to an identification of the land in controversy." *Eckford*, 58 N.W. at 1094. "But when the false language is eliminated, and nothing remains directing inquiry

which may result in discovering the true subject of the devise, it is void." *Christy v. Badger*, 34 N.W. 427, 428 (Iowa 1887) (finding insufficient description to identify land in controversy); *accord Fitzpatrick v. Fitzpatrick*, 36 Iowa 674, 687 (1873). When determining whether enough description remains in the will to identify the premises intended to be devised, we may consider "surrounding circumstances at the time it was executed." *Whitehouse*, 113 N.W. at 761.

Applied here, we must decide whether—after rejecting the false description of Township 92—we can identify the property Arthur intended to devise. We look to the circumstances at the time he executed the will in 2012. True, he owned property in Section 10, Township 97, Range 29. But the will accounted for all that property; Arthur devised that farmland in two parcels in paragraphs A and D of article two. At oral argument, Cynthia's counsel acknowledged that Arthur "likely" owned no other property in Section 10, Township 97, Range 29 when he signed the will.[6] Because Township 92 is a false description, and because nothing else in the will or in surrounding circumstances helps us determine the identity of the devised property, that provision is void.

Having determined the devise of "all my real property in Section 10, Township 92, Range 29" is void, we read the remaining will as written, ignoring that devise. No ambiguities remain; the testator's intent is clear

---

[6] Counsel urges us to find that when Arthur drafted paragraph B, he had in mind the prospect of buying more property in Section 10 of Township 97. But as counsel conceded at oral argument, no evidence supports a finding of that intent. Nowhere in the will does Arthur mention after-acquired property. Because we cannot redraw those provisions "to carry out a possible intent not expressed in the will," we decline to find Arthur intended for that devise to include his after-acquired property. *See Bankers Tr. Co. v. Allen*, 135 N.W.2d 607, 611 (Iowa 1965).

from the language of the rest of the will.[7] Applying the terms as written, the after-acquired property falls into article four of the will, which devises "the rest, residue and remainder" of Arthur's estate. *See Palmer v. Evans*, 124 N.W.2d 856, 860 (Iowa 1963) ("Where the intention is thus clearly and unequivocally expressed there is no need for judicial construction . . . .").

In sum, we find the second clause of paragraph B to be void and agree with the district court that the after-acquired property should pass through article four.

**AFFIRMED.**

---

[7] In their appellate briefing, each party offered canons of construction to assist us in interpreting Arthur's will. But having found the will is now clear and unambiguous, we need not address those arguments.